## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW TETER and JAMES GRELL  ) | |
| ) | |
| ) | |
| ) | |
| Plaintiffs,              ) | |
| ) | Civil Action No. _____ |
| v.                     ) | |
| ) | |
| CLARE E. CONNORS, in her    ) | |
| Official Capacity as the Attorney General  ) | |
| of the State of Hawaii, and AL    ) | |
| CUMMINGS, in his Official Capacity as the ) | |
| State Sheriff Division Administrator,   ) | |
| ) | |
| ) | |
| Defendants.          ) | |
| _____) | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW the Plaintiffs, ANDREW TETER and JAMES GRELL, ("Plaintiffs"), by and through their undersigned counsel, and complain of the Defendants as follows:

### I.    PARTIES

1.    Plaintiff James Grell is an adult male resident of the State of Hawaii and resides in Hawai'i County and is a citizen of the United States.

2.    Plaintiff Andrew Teter is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

3.    Defendant Clare E. Connors is the Attorney General of the State of Hawaii. She is being sued in her official capacity. She is responsible for enforcing the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii's ban on butterfly knives. Defendant Connor may be served at the Office of Attorney General located at 425 Queen St, Honolulu, Hawaii 96813.

4.     Defendant Al Cummings is sued in his official capacity as State Sheriff Division Administrator. Defendant Cummings is responsible for enforcing the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii's ban on butterfly knives.  Defendant Cummings may be served at the Department of Public Safety, Sheriff's division, located at 1177 Alakea Street, Room #418, Honolulu, Hawaii 96813.

## II.     JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

6.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.     STATEMENT OF FACTS

### a.  The Second Amendment

7.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

8.     The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

9.     Arms are "'weapons of offence, or armour of defence.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.' 1 A New and Complete Law Dictionary (1771)."  *District of Columbia v. Heller*, 554 U.S. at 581.

10.     The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller,* 554 U.S. at 582; *Caetano*, slip op. at 1 (per curiam).

11.     Under the Second Amendment, Defendants retain the ability presumptively to regulate the manner of carrying arms and may prohibit certain arms in narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment's protection such as unusually dangerous arms, and disqualify specific, particularly dangerous individuals from carrying arms. *See Heller,* 554 U.S. at 627.

12.     Given the decision in *Heller*, Defendants may not completely ban the keeping and bearing of arms for self-defense that are not unusually dangerous, deny individuals the right to carry arms in non-sensitive places, deprive individuals of the right to keep or carry arms in an arbitrary and capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment.  *See Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016); *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015); *Palmer v. District of Columbia,* 59 F.Supp.3d 173 (2014).

13.     In a recent Fifth Circuit Court of Appeals case, the Fifth Circuit cited approvingly to *Caetano* for the proposition that stun guns are protected arms under the Second Amendment:

> In addressing whether stun guns are in common use, Justice Alito, joined by Justice Thomas, implied that the number of states that allow or bar a particular weapon is important:
>
>> [T]he number of Tasers and stun guns is dwarfed by the number of firearms. This observation may be true, but it is beside the point.... The more relevant statistic is that [200,000] ... stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 States.... While less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country.

*Caetano*, 136 S.Ct. at 1032–33 (citations and quotation marks omitted). These two justices suggested that the 200,000 absolute number, plus that 45 states have "accepted [stun guns] as a legitimate means of self-defense," was enough to determine that the stun gun is in common use.

*Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016).

14.     Many other jurisdictions have already found complete bans on the ownership of arms other than firearms are unconstitutional post-*Heller*.

15.     Bans on electric arms have been struck across the nation. *See People v. Yanna*, 824 N.W.2d 241, 243 (Mich. Ct. App. 2012) (striking down a Michigan statute criminalizing possession of electronic weapons), *Second Amendment Society v. Porrino*, No. 3:16-cv-04906-DEA (D.N.J. Nov. 16, 2016) Doc. No. 30 (consent decree where the Court found New Jersey's complete ban on electric arms is unconstitutional), ("Pursuant to the holdings in *Heller, McDonald and Caetano*, N.J. Stat. Ann . § 2C:39- 3(h), to the extent this statute outright prohibits, under criminal penalty, individuals from possessing electronic arms, is declared unconstitutional in that it violates the Second Amendment to the United States Constitution and shall not be enforced"); *See, Crystal Wright v. District of Columbia*, No. 1:16-cv-01556-JEB (D.D.C. Sept. 26, 2016) Doc. No. 18 (stipulating to a stay of a motion for preliminary injunction pending new legislation and agreeing not to enforce ban against plaintiffs); *Ford v. City of New Orleans*, No. 2:16-cv16433-MVL-KWR (E.D. La. Dec. 14, 2016) Doc. Nos. 17, 19-20 (stipulating that the city will not enforce the ban against plaintiff and consenting to a stay of litigation pending enactment of legislation that decriminalized possession of stun guns); *Hulbert v. Pantelides*, No. 1:16-cv-04121-JFM (D. Md. March 3, 2017) Doc. No. 16 (letter from the City of Annapolis informing the court that the City Council passed an emergency ordinance eliminating all restrictions on ownership and possession of electronic weapons for personal defense); *Ramirez v. Commonwealth*

No. SJC-12340, 2018 Mass. LEXIS 237 (Apr. 17, 2018) (striking Mass. ban on stun guns).[1] *See Avitabile v. Beach*, 2019 U.S. Dist. LEXIS 47506, __ F. Supp. 3d __, 2019 WL 1302858, striking New York State's ban on electric arms. *See People v. Walker*, 2019 Ill. LEXIS 329, 2019 WL 1307950 striking Illinois's ban on taser ownership and carry.

16.     In *Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018), the United States District Court for the Southern District of New York struck the State of New York's ban on nunchucks as a violation of the Second Amendment.  It found nunchucks are protected by the Second Amendment because they are bearable arms that are typically used for lawful purposes.  It then struck New York's ban because the State did not have an important government interest in banning these protected arms.

17.     Specifically, many jurisdictions have already ruled on whether knives are protected by the Second Amendment.

18.     In upholding a criminal conviction for possession of a switchblade, the New Mexico Court of Appeals found that knives are protected by the Second Amendment and upheld that specific ban applying intermediate scrutiny. *See State v. Murillo*, 347 P.3d 284 (2015).

19.     In *City of Seattle v. Evans*, 366 P.3d 906 (2015), the Washington Supreme Court evaluated the conviction for carrying a paring knife (a type of kitchen knife).  The Court found that paring knives are not protected by the Second Amendment because paring knives are not designed to be used for self defense. "We hold that the right to bear arms protects instruments that are designed as weapons traditionally or commonly used by law-abiding citizens for the lawful

---

[1] Since *Caetano*, electronic arms bans in Philadelphia, Pennsylvania; Tacoma, Washington and Westminster, Maryland were also rescinded. https://www.phillymag.com/news/2017/10/24/stun-guns-legal-philadelphia/ (last visited 4/6/2019);   http://www.carrollcountytimes.com/news/westminster/ph-cc-westminster-stun-gun-ban-discussion-20170523-story.html;   http://www.thenewstribune.com/news/politics-government/article158619749.html (last visited 4/6/2019).

purpose of self-defense. In considering whether a weapon is an arm, we look to the historical origins and use of that weapon, noting that a weapon does not need to be designed for military use to be traditionally or commonly used for self-defense. We will also consider the weapon's purpose and intended function." *City of Seattle* at 913. Then the Court went on to strongly suggest that knives designed for self-defense such as "bowie knives and swords", having been commonly used for self-defense may be considered arms. *See City of Seattle* at 906.

20.     In *State v. Deciccio*, 105 A.3d 165 (Conn. 2014), the Connecticut Supreme Court overturned the conviction for transport of a dirk knife and a baton as a violation of the litigants Second Amendment rights.  In doing so the Court found that dirk knives and batons are protected by the Second Amendment because they are weapons with traditional military utility that are "typically possessed by law-abiding citizens for lawful purposes"; *Id.* at 625; and not "dangerous and unusual weapons." (Internal quotation marks omitted.) *Id.*, 627. It then applied intermediate scrutiny and held the conviction unconstitutional.

21.     The California Appeals Court has found that knives are protected by the Second Amendment. In *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012), the court held "the dirk or dagger concealed carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or non-switchblade folding or pocketknife. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny." *Id.* at 1374. Here, since Hawaii completely bans butterfly knives, *Mitchell* supports the position that Hawaii's ban on butterfly knives is unconstitutional.

22. In *State v. Montalvo*, 162 A.3d 270 (2017), the New Jersey Supreme Court overturned the conviction for possession of a machete. In doing so, the Court found that machete-type knives are protected by the Second Amendment and that a conviction for their possession in the home was unconstitutional.

23. In *State v. Herrmann*, 2015 WI App 97, the Wisconsin Court of Appeals overturned appellant's the conviction for possession of a switchblade was unconstitutional. In doing so, the court found that switchblades are protected by the Second Amendment and that Wisconsin's complete ban on their possession was unconstitutional.

24. In *State v. Delgado*, 692 P.2d 610 (1984), the Oregon Supreme Court found that Oregon's ban on the possession of switchblades violated the Oregon Constitution's right to arms.

25. Many other state courts have likewise concluded that the right to keep and bear arms found within their state constitutions extends beyond handguns. *See State v Griffin*, 2011 WL 2083893, *7 n62, 2011 Del Super LEXIS 193, *26 n62 (Del Super Ct, May 16, 2011) (holding that the "right to keep and bear arms" under the Delaware Constitution extends to knives, and concluding that the Second Amendment right does the same); *City of Akron v Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) (concluding that the "right to keep and bear arms" under the Ohio Constitution extends to knives*); State v Blocker*, 630 P2d 824 (1981) (same as to billy clubs), citing *State v Kessler,* 614 P2d 94 (1980); *also Barnett v State*, 695 P2d 991 (Ct App, 1985) (same as to blackjacks).

26. Plaintiffs are bringing an as-applied and facial challenge to the applicable Hawaii laws which prevent them from owning butterfly knives.

27. Plaintiffs seek an injunction preventing enforcement of the applicable Hawaii laws as applied to themselves and for declaratory relief.

28.     Additionally, Plaintiffs seek an injunction preventing enforcement of the applicable Hawaii laws as to all other law-abiding citizens.

**b.  Knives are Protected by the Second Amendment**

29.     In *Heller,* the Court ruled that the "Second Amendment extends prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of founding." *Heller*, 128 S. Ct. at 2817. In order to strike down the ban on hand guns it ruled a complete ban on a protected arm cannot withstand any level of scrutiny. *Id.*

30.     Thus, while "dangerous and unusual weapons" may likely be regulated, "the sorts of weapons protected [a]re those 'in common use at this time.'" *Id*. at 627

31. There are more knives owned in the United States for lawful purposes such as self-defense than there are handguns in the United States. Thus, knives are just as much in common use as handguns.

32.     Knives are arms protected by the Second Amendment. *See* David B. Kopel, Clayton E. Cramer & Joseph Edward Olsen, Knives and the Second Amendment, 47 U. Mich. J.L. Reform 167, 183 (Fall 2013).

33.     In *United States v. Henry*, 688 F. 3d 637 (9th Cir. 2012), the Ninth Circuit held that machine guns are not protected by the Second Amendment because they are dangerous and unusual. "A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. *See* George C. Wilson, Visible Violence, 12 NAT'L J. 886, 887 (2003)." Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns. A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that were not

lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market." *Id*. at 640.[2]

34.     However, unlike machineguns which have been artificially limited in ownership by § 922(o), knives are arms in common use for lawful self-defense.

35.     Butterfly knives are arms in common use for lawful self-defense.

36.     Butterfly knives are a traditional martial arts weapon of the Filipino people.

37.     It is commonly owned by Filipinos for purposes of lawful self-defense throughout the world.

38.     According to the 2010 U.S. Census Filipinos account for  24.6. percent of the population     of     Hawaii     and     is     its     second     largest     ethnic     group.     *See* http://www.ohadatabook.com/HSDC2010-5_Filipino.pdf last visited (4/8/2019)

39.     Unlike machine guns, knives and butterfly knives as a form of knife are statistically less dangerous than handguns.

40.     Gunshots are generally more lethal than knife injuries.

41.     Wilson & Sherman's 1960 study of hospital admissions for abdominal wounds found that abdominal stabbing cases ended in death 3.1 percent of the time, while 9.8 percent of gunshot abdominal wounds were lethal. *See Harwell Wilson & Roger Sherman, Civilian Penetrating Wounds to the Abdomen,* 153 ANNALS OF SURGERY 639, 640 (1961). See Exhibit"1".

42.     An examination of 165 family and intimate assaults (FIA) in Atlanta, Georgia in 1984 found similar results: firearms-associated FIAs were three times more likely to result in death than "FIAs involving knives or other cutting instruments." *See Linda E. Saltzman, James A. Mercy,*

---

[2] Plaintiffs expressly reserve the right to challenge the accuracy of the Ninth Circuit's interpretation of Heller's dangerous and unusual language at the appropriate time.

*Patrick W. O'Carroll et al., Weapon Involvement and Injury Outcomes in Family and Intimate Assaults*, 267 JAMA 3043 (1992).  See Exhibit "2".

43.     Another study examined all New Mexico's penetrating traumas ("firearm or stabbing injury") "who presented to either the state Level-1 trauma center or the state medical examiner" from 1978 to 1993. This study found that while nonfatal injury rates were similar for firearms and stabbing (34.3 per 100,000 person-years for firearms, 35.1 per 100,000 person-years for stabbing), firearm fatality rates were much higher than for knives: 21.9 vs. 2.7 respectively. In other words, 39.0 percent of firearm penetrating traumas were fatal, compared to 7.1 percent of knife penetrating traumas; so firearm injuries were 5.5 times more likely to result in death than were knife injuries.  But not all of the New Mexico penetrating traumas were criminal attacks; 44 percent of the firearms deaths and 57 percent of the knife deaths were suicides. While 8 percent of the firearms deaths were accidents, so were 3 percent of the knife deaths. *See* 123 Cameron Crandall, Lenora Olson, Lynne Fullerton, et al., Guns and Knives in New Mexico: Patterns of Penetrating Trauma, 1978-1993, 4 ACAD. EMERGENCY MEDICINE 265 (1997). *See* Exhibit "3".  As for the remaining firearms deaths classified as "homicide," about 7-13 percent of them were probably justifiable homicides by persons who were not law enforcement officers. GARY KLECK, POINT BLANK: GUNS AND VIOLENCE IN AMERICA 114 (1991). It is unknown whether a similar percent of the knife homicides was justifiable.

44.     In 2017 (the most recent year for which data is available online) information collected by the FBI collected regarding types of weapons used in violent crime showed that firearms were used in 72.6 percent of the nation's murders, 40.6 percent of robberies, and 26.3 percent of aggravated assaults. *See*  https://ucr.fbi.gov/crime-in-the-u.s/2017/crime-in-the-u.s.-2017/topic-pages/violent-crime (last visited 4/4/2019).

45.     Knives and other edged weapons accounted for approximately 10.5% of murders, 8.1% of robberies and 17.2% of aggravated assaults in 2017. *See Id; See also* https://ucr.fbi.gov/crime-in-the-u.s/2017/crime-in-the-u.s.-2017/tables/expanded-homicide-data-table-7.xls; https://ucr.fbi.gov/crime-in-the-u.s/2017/crime-in-the-u.s.-2017/tables/robbery-table-3.xls; https://ucr.fbi.gov/crime-in-the-u.s/2017/crime-in-the-u.s.-2017/tables/aggravated-assault.xls.

46.     Analgous to nunchucks, butterfly knives, "as used in the martial arts, are socially acceptable and lawful behavior, especially here in Hawaii where the oriental culture and heritage play a very important role in society." *See State v. Muliufi* 643 P.2d 546, 548 (1982)

47.     Today, butterfy knives "are widely used in the martial arts to build up dexterity, timing, mind and body coordination and aids in developing a larger sphere of consciousness around an individual". *Id*. At 549.

48.     Knives and butterfly knives as a form of knife are bearable arms.

49.     Knives are a utensil, or a tool designed for cutting and/or piercing, consisting of a flat piece of hard material, usually steel or other metal (the blade), usually sharpened and attached to a handle.

50.     Butterfly knives are a type of knife.

51.     Butterfly knives are any "knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both". [3]

---

[3] Image available at https://survivallife.com/all-about-butterfly-knives/ (last visited 4/4/2019)



52.     Butterfly knives are banned in Hawaii pursuant to state law. *See* H.R.S. §134-53.

53.     The butterfly knife consists of two counter-rotating handles that open to expose a single blade. The blade is usually sharpened on one side and is made from steel.

54.     Butterfly knives are the safest form of pocketknife because the blade is entirely enclosed when folded and when open it is impossible for the blade to accidentally to close on the user's fingers.

55.     Most states that ban types of knives do not include butterfly knives in their bans on possession, and thus allow their ownership. *E.g.* in New York, the balisong – another name for a butterfly knife -- has been determined not to be a prohibited knife, and therefore legal to own. *See People v. Zuniga*, 303 A.D.2d 773 (2nd Dept. 2003). *See also State v. Strange*, 785 P.2d 563 (Alaska Ct. App. 1990) (citing Alaska Stat. 11.61.200(e)(1)(D) (1989)) finding that butterfly knives are not within that state's statutory prohibition on "switchblades" and "gravity knives."

56.     In the past few years, knife laws have been loosening nation-wide.

57.     Twenty-one states have repealed or liberalized their knife laws since 2010, many of them with bipartisan support, including Colorado, Michigan and Illinois. *See* https://www.chicagotribune.com/news/nationworld/ct-knife-rights-activists-nra-20180915-story.html (last visited 4/4/2019).

58.     Some of these repealed laws also repealed the ban on switchblade knives.

59.     Some of those switchblade bans were interpreted to include criminalizing the possession of butterfly knives.

60.     A number of courts have considered whether butterfly or balisong knives qualify as prohibited switchblade or gravity knives. *See, e.g., Taylor v. United States*, 848 F.2d 715 (6th Cir.1988); *Precise Imports Corporation v. Kelly*, 378 F.2d 1014 (2d Cir.1967), cert. denied, 389 U.S. 973, 88 S. Ct. 472, 19 L. Ed. 2d 465 (1967); *People v. Quattrone*, 211 Cal. App. 3d 1389, 260 Cal. Rptr. 44, 45 (1 Dist. 1989); *People v. Dolson*, 142 Misc. 2d 779, 538 N.Y.S.2d 393 (N.Y. Co. Ct. 1989); *People v. Mott*, 137 Misc. 2d 757, 522 N.Y.S.2d 429 (N.Y. Co. Ct. 1987).

61.     Upon information and belief Plaintiff believes that the only other states that completely ban butterfly knives are Washington and New Mexico.

62.     In New Mexico, possession of a butterfly knife is illegal, because the butterfly knife is a "switchblade" within the meaning of the statute making possession of switchblades unlawful *See State of New Mexico v. Riddall*, 112 N.M. 78, 811 P.2d 576 (N.M. App. 1991).

63.     During this legislative term, Washington State's "Spring Blade" Ban Repeal bill, SB 5782, was voted out of the House Civil Rights & Judiciary Committee 10-2 with a "do pass" recommendation. It is expected to be signed by the governor and if signed will repeal Washington State's ban on the possession of switchblade and butterfly knives. *See* https://kniferights.org/legislative-update/washington-state-switchblade-ban-repeal-bill-introduced/ (last visited 4/4/2019).

64.     Thus, butterfly knives are currently legal to possess in 47 states and if the Washington bill is signed, they will be legal to possess in 48 states.

65.     Unlike machine guns, butterfly knives do not rise to the level of lethality that a machine gun would be capable of and are less dangerous than the handgun that was specifically held to be protected in *Heller*.

66.     Thus, knives and butterfly knives as a type of knife are not dangerous and unusual weapons.

67.     Butterfly knives as a form of knife are arms protected by the Second Amendment.

68.     There is no government interest in banning butterfly knives in the home.

69.     Plaintiffs' expert Burton Richardson has conducted a study of a variety of blades in order to show the design of the butterfly knife makes them deploy slower than traditional knives. His study is listed below and upon information and belief Burton Richardson will be able to reproduce his findings for the Court.

70.     Mr. Richardson's study found that the butterfly knife opened significantly slower than other knives, with an averaged opening time of 1.35 second compared to a standard folding knife of 0.95 seconds.  A switch blade, for instance, opened at the same speed as a standard pocket knife and faster than a butterfly knife.

71.     Mr. Richardson's declaration is attached as Exhibit "4".

72.     Plaintiffs via their expert can and will reproduce the results of the above via an official expert report or at trial in order to demonstrate the draw time for a butterfly knife is slower than for other folding knives.

73.     Thus, they are not "designed for quick use in a knife fight." *Nick R.*, 2009-NMSC-050, ¶ 2. *See State v. Murillo*, 347 P.3d 284, 289 (N.M. Ct. App. 2015).

74.     Butterfly knives are typically produced, designed and possessed for purposes of lawful self-defense. Thus, [they are not], "by design and use, almost exclusively the weapon of the thug and the delinquent." *Id.*

75.     Thus, even assuming that this was an important governmental to ban switchblades. unlike the switchblade law evaluated by the Court in *Murrillo,* the State of Hawaii's butterfly knife ban does not "protect the public from the surprise use of a dangerous weapon utilized in large part for unlawful activity". *See Id.*

76.     *Murillo* is also factually distinguishable because, unlike Plaintiffs, the defendant in *Murillo* did not wish to possess a switchblade "in his own home for his protection. Instead, he was convicted of possessing a switchblade after using it in a fight at a Wal-Mart". *Id.* at 286. Accordingly, Murillo did not implicate the core Second Amendment right to keep and bear arms in one's own home for self-defense. *See State v. Herrmann*, 366 Wis. 2d at 324-325.

77.     Plaintiffs challenge is further distinguishable because "the defendant in Murillo did not raise his Second Amendment challenge in the trial court and therefore deprived the State of the opportunity to make an evidentiary showing that the challenged statute withstood intermediate scrutiny. *Id*. at 286, 289 n.2. The *Murillo* court nevertheless chose to address the defendant's argument, reasoning that: "[o]ther cases have addressed the issue, and, rather than remanding this case to the district court, we can address Defendant's arguments based on case law." *Id*. at 289 n.2. Thus, although the *Murillo* court purported to apply intermediate scrutiny, it did not actually hold the government to its burden of proof, choosing instead to rely on unsupported statements from pre-*Heller* case law about the dangerousness of switchblades and their frequent use by criminals." *See State v. Herrmann*, 366 Wis. 2d at 312, 326.

78.     Butterfly knives were originally designed in the Philippines.

79. Oral histories claim that the knives were first created in the Philippines in 800 CE. However, there is no documentation or archeological evidence to back this.

80. Regardless of the origin, the modern balisong was perfected in the Philippines, where it became much larger and were predominantly used as a weapon and not just a tool.

81. The opening techniques ("flipping") associated with the butterfly knife were also developed in the Philippines.

82. The handle design of the butterfly knife is so that the blade can be opened when needed one handed (such as when holding onto a tree while cutting a coconut) and to make for a stronger platform so that the knife's blade does not fall out of place.

83. The butterfly knife is also a traditional martial arts weapon of the Filipino people.

84. The martial arts system kali uses butterfly knives as part of their system and is widely trained by persons throughout the United States and the world.

85. Butterfly knives are not dangerous and unusual and are lawfully owned and legal in a supermajority of States.

**c. Plaintiff James Grell.**

86. Plaintiff Grell desires to purchase a butterfly knife for self-defense and other lawful purposes in his home, business, whilst traveling between these locations and in all other locations.

87. Prior to living in Hawaii, Plaintiff Grell owned a prohibited butterfly knife.

88. He was forced to dispose of it prior moving to Hawaii due to Hawaii's ban on the knife.

89. Plaintiff Grell is employed as an accountant on the Island of Hawaii.

90. Plaintiff Grell has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaii or federal law.

91.    Plaintiff Grell has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

92.    Plaintiff Grell does not take illegal drugs or abuse alcohol.

93.    Plaintiff Grell desires to purchase a butterfly knife. However, Plaintiff fears prosecution for possessing it.

94.    But for Hawaii law, Plaintiff Grell would acquire, possess, carry and where appropriate use a butterfly knife to protect himself, his home, his family and business.

95.    Plaintiff Grell desires to purchase a butterfly knife for self-defense and other lawful purposes in his home, business, whilst traveling between these locations and in all other locations.

**d.    Plaintiff Andrew Teter**

96.    Plaintiff Andrew Teter wishes to own a butterfly and does not own one solely due to Hawaii's ban on the device.

97.    Plaintiff Teter is employed in the trade of buying and selling knives.

98.    Plaintiff Teter wishes to purchase a butterfly knife for lawful self-defense and does not solely due to Hawaii law.

99.    Plaintiff Teter has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaii or federal law.

100.    Plaintiff Teter has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

101.    Plaintiff Teter desires to purchase a butterfly knife. However, Plaintiff fears prosecution for possessing it and has therefore refrained from purchasing one.

102.    But for Hawaii law, Plaintiff Teter would acquire, possess, carry and where appropriate use a butterfly knife to protect himself, his home, his family and business.

**FIRST CAUSE OF ACTION**
**U.S. CONST., AMEND. II & VIII, 42 U.S.C. § 1983**
**(AGAINST ALL DEFENDANTS)**

103.    Plaintiffs repeat and re-plead the preceding paragraphs, inclusive, and incorporates the same herein by reference.

104.    Defendants prohibit Plaintiffs from acquiring, possessing, carrying and using a defensive arm in common use, i.e., butterfly knives.  As such it violates Plaintiffs' Second Amendment rights.

105.    Defendants' laws, customs, practices and policies generally banning the acquisition, possession, carrying and use of butterfly knives violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies, and practices.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(AGAINST ALL DEFENDANTS)**

106.    Plaintiffs repeat and re-plead the preceding paragraphs, inclusive, and incorporate the same herein by reference.

107.    The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

108.     Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future.

109.    There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

110.    This Court possesses an independent basis for jurisdiction over the parties.

111.    A judgment declaring that the State of Hawaii's ban on the ownership of butterfly knives violates the Second Amendment will serve a useful purpose in clarifying and settling the legal relations at issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

112.    Defendants' laws, customs, practices and policies generally banning the acquisition, possession, carrying and use of butterfly knives violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to a declaration declaring such laws, customs, policies, and practices unconstitutional.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.    An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing HI Rev Stat § 134-53 ban on the acquisition, possession, carrying or use of butterfly knives as applied to Plaintiffs and additionally against other similarly situated law abiding persons;

2.    An order declaring that HI Rev Stat §134-53 unconstitutional and violative of the Second Amendment to the United States Constitution as applied to Plaintiffs and to all other law-abiding citizens;

3.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

4.      Such other Declaratory relief consistent with the injunction as appropriate; and

5.      Such other further relief as the Court deems just and appropriate.

Dated:  April 10, 2018.

                                        Respectfully submitted,

                                        **JAMES GRELL AND ANDREW TETER**

                                        /s/ Alan Beck
                                        Counsel for Plaintiff

                                        Alan Alexander Beck
                                        Law Office of Alan Beck
                                        2692 Harcourt Drive
                                        San Diego, CA  92123
                                        (619) 905-9105
                                        Hawaii Bar No. 9145
                                        Alan.alexander.beck@gmail.com

                                        Stephen D. Stamboulieh
                                        Stamboulieh Law, PLLC
                                        P.O. Box 4008
                                        Madison, MS  39130
                                        (601) 852-3440
                                        stephen@sdslaw.us
                                        MS Bar No. 102784
                                        *Pro Hac Paperwork Forthcoming*