Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS 39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs
ANDREW TETER & JAMES GRELL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW TETER and JAMES GRELL ) | Civil No. 1:19-cv-00183 ACK-WRP |
| ) | |
| Plaintiffs, ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| v. ) | MOTION |
| ) | |
| CLARE E. CONNORS, in her ) | |
| Official Capacity as the Attorney ) | |
| General of the State of Hawaii and AL) | |
| CUMMINGS in his Official Capacity ) | |
| as the State Sheriff Division ) | TRIAL: June 16, 2020 9AM |
| Administrator ) | JUDGE: Hon. Alan C. Kay |
| ) | HEARING: Not Scheduled |
| Defendants. ) | |
| _____) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.      Introduction……………………………………………………………1

II.     Legal Standard………………………………………….……..……….2

III.    Knives Are Protected by the Second Amendment...……..……..…………..3

IV.     This Court Should Find Hawaii's Butterfly Knife Ban Categorically
        Unconstitutional…………………………………………………......12

        a.  Strict Scrutiny Should Apply…………………………………..….15

        b.  Under Intermediate Scrutiny Hawaii's Butterfly Knife Ban is
            Unconstitutional…………………………………………….……..19

V.      Conclusion……..……………………………………………......…...25

# TABLE OF AUTHORITIES

**Cases**

*Avitabile v. Beach*, 2019 U.S. Dist. LEXIS 47506, __ F. Supp. 3d __, 2019 WL
1302858.....................................................................................................7

*Bateman v. Perdue* 881 F.Supp.2d 709 (2012).....................................17

*Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (en banc) .............................23

*Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252 (9th Cir. 1999)...................3

*Caetano v. Massachusetts*, 136 S. Ct. 1027,  194 L. Ed. 2d 99...............................3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..3

*City of Akron v Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) ...............................9

*City of Seattle v. Evans*, 366 P.3d 906 (2015) ...........................................8

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................... passim

*Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1120, 2017 U.S. Dist. LEXIS 101549
2017 WL 2813727 ................................................................... 20, 21

*Duncan v. Becerra*, 366 F. Supp. 3d 1131, 2019 U.S. Dist. LEXIS 54597 ...........21

*Ezell v. City of Chicago* ("Ezell II"), 846 F.3d 888 (7th Cir. 2017).......................19

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ...........................................18

*Fisher v. Kealoha*, 855 F.3d 1067, 1071, 2017 U.S. App. LEXIS 8007, *9, 2017
WL 1753271 ........................................................................... 15, 16

*Fletcher v. Haas*, 851 F. Supp. 2d 287 (D. Mass. 2012) .................................. 20, 22

*Fyock v. City of Sunnyvale*, 779 F.3d 991, 2015 U.S. App. LEXIS 3471 ................3

*Hatfield v. Sessions,* No. 3:16-cv-00383-JPG-RJD, 2018 U.S. Dist. LEXIS 70431
(S.D. Ill. Apr. 26, 2018).......................................................................18

*Heller v. District of Columbia*, 419 U.S. App. D.C. 287, 801 F.3d 264 (2015)......24

*Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill.
2014) ..............................................................................................19

*In re Interest of Doe*, 73 Haw. 89, 828 P.2d 272, 1992 Haw. LEXIS 32 ...............12

*Jackson v. City & County of San Francisco*, 746 F.3d 953, 2014 U.S. App. LEXIS 5498, 2014 WL 1193434 ........................................................................ 13, 16, 20

*Keyes v. Sessions,* 282 F. Supp. 3d 858 (M.D. Pa. 2017) ......................................23

*Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018) ......................................7

*McDonald v. Chicago,* 561 U.S. 742 (2010) ......................................................3, 25

*Morris v. United States Army Corps of Eng'rs,* 60 F. Supp. 3d 1120 (D. Idaho 2014) ....................................................................................................................14

*Murphy v. Robert Guerrero*, et al., 1:14-CV-00026, 2016 WL 5508998, (D.N. Mar. Is. Sept. 28, 2016) ........................................................................................21

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015)..................21

*Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014) .......................15

*People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) ...................................................9

*People v. Yanna*, 824 N.W.2d 241 (Mich. Ct. App. 2012)............................... 13, 14

*Ramirez v. Commonwealth* No. SJC-12340, 2018 Mass. LEXIS 237 (Apr. 17, 2018) ...................................................................................................................13

*Richmond v. Peraino*, 128 F. Supp. 3d 415 (D. Mass. 2015) ..................................14

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ...................................................20

*State v Griffin*, 2011 WL 2083893, 2011 Del Super LEXIS 193, (Del Super Ct, May 16, 2011)........................................................................................................9

*State v. DeCiccio*, 315 Conn. 79, 105 A.3d 165 (Conn. 2014) ................................8

*State v. Delgado*, 692 P.2d 610 (1984) ..............................................................9, 12

*State v. Herrmann*, 2015 WI App 97 ......................................................... 7, 12, 22

*State v. Montalvo*, 162 A.3d 270 (2017)............................................................9, 14

*State v. Muliufi* 643 P.2d 546 (1982) ........................................................................7

*State v. Murillo*, 347 P.3d 284, 289 (2015).................................................... 10, 12

*Taylor v. City of Baton Rouge,* 39 F. Supp. 3d 807 (M.D. La. 2014) .....................18

*Taylor v. McManus*, 661 F. Supp. 11, 1986 U.S. Dist. LEXIS 18098, *4 ...............1

*THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JULIO CHAIREZ, Appellee.*, 2018 IL 121417, 2018 WL 652814 ....................................22

*Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707 (1981) .......17

*Tyler v. Hillsdale Cnty. Sheriff's Dep't,* 837 F.3d 678 (6th Cir. 2016) (en banc).. 22, 23

*United States v. Chovan,* 735 F.3d 1127 (9th Cir. 2013)..................... 12, 15, 16, 20

*United States v. Henry*, 688 F.3d 637, 2012 U.S. App. LEXIS 16615, *6-7, 2012 WL 3217255 ..........................................................................................4

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017). ...........................15

## Statutes

18 U.S.C. § 922(g)(1).......................................................................... 18, 23

H.R.S. § 134-53...................................................................................1

## Other Authorities

123 Cameron Crandall, Lenora Olson, Lynne Fullerton, et al., Guns and Knives in New Mexico: Patterns of Penetrating Trauma, 1978-1993, 4 ACAD. EMERGENCY MEDICINE 265 (1997) ............................................................6

FBI Crime Statistics- https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/topic-pages/violent-crime ...........................................................6

Harwell Wilson & Roger Sherman, Civilian Penetrating Wounds to the Abdomen, 153 ANNALS OF SURGERY 639, 640 (1961)....................................5

Linda E. Saltzman, James A. Mercy, Patrick W. O'Carroll et al., Weapon Involvement and Injury Outcomes in Family and Intimate Assaults, 267 JAMA 3043 (1992)...........................................................................5

## Rules

Fed. R. Civ. P. 56(a).............................................................................................2, 3

## I.  Introduction

James Grell and Andrew Teter ("Plaintiffs") move for summary judgement in their challenge to the State of Hawaii's ban on the possession of butterfly knives[1]. Plaintiffs wished to purchase a butterfly knife for self-defense and other lawful purposes in their home and would acquire, possess, carry and where appropriate use a butterfly knife to protect themselves and their homes. [Ex. "A" ¶ 6 & Ex. "B" ¶ 6, Dec. of Andrew Teter & Dec. of James Grell].  The butterfly knife:

> originated in the Philippines several hundred years ago. Although varied in style and design, the Balisong is basically a folding knife with a split handle. In the closed position, the two halves of the handle enclose the blade. To open the knife, the two halves are folded back until they meet and are then secured by a clasp… While the exotic knife has some utilitarian use, it is most often associated with the martial arts and with combat.

*Taylor v. McManus*, 661 F. Supp. 11, 13, 1986 U.S. Dist. LEXIS 18098, *4.

H.R.S. § 134-53 provides that "(a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any butterfly knife, being a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both, shall be guilty of a misdemeanor."  This provision serves to outlaw the possession and use of butterfly

---

[1] Butterfly knives are also known as balisong knives and are referred at some points as balisong knives in the briefing when referencing other authorities.  The knife is known as a "butterfly knife" because when opening, the knife resembles a butterfly. *See* https://en.wikipedia.org/wiki/Butterfly_knife (last visited January 14, 2020).

knives even within home.  As established below, butterfly knives are arms protected by the Second Amendment.  Thus, this prohibition is a violation of Plaintiffs' Second Amendment rights.  Plaintiffs have never been convicted of a crime, either misdemeanor or felony and have never been convicted of a crime of domestic violence.  They have never been deemed by mental health professionals to have a mental illness.  *See* Ex. "A" ¶¶ 4-5 & Ex. "B" ¶¶ 4-5, Dec. of Andrew Teter & Dec. of James Grell.

Burton Richardson was designated as Plaintiffs' expert. He has been employed as a martial arts and knife fighting instructor on the Island of Oahu. He has decades of experience training with butterfly knives and has extensively studied their history.  *See* Exhibit "C" Declaration of Burton Richardson, ¶ 3.   In his Declaration, Mr. Richardson states that "because of its design [a butterfly knife] has the slowest speed of opening of any modern self-defense knife."  *Id*. at p. 3.   Mr. Richardson stated that these arms are common arms of the Filipino people. *See* Exhibit "D", Report of Burton Richardon p. 3.  The State's witness testified that butterfly knives were created in the Philippines.  *See* Deposition of Robin Nagamine, Exhibit "E", Tr. at 26.

II.    Legal Standard

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). *See* Fed. R. Civ. P. 56(a).

III.    <u>Knives Are Protected by the Second Amendment</u>

"[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1027, 194 L. Ed. 2d 99, 99, 2016 U.S. LEXIS 1862, *1. In this Circuit, this includes all arms "commonly possessed by law-abiding citizens for lawful purposes". *See Fyock v. City of Sunnyvale*, 779 F.3d 991, 998, 2015 U.S. App. LEXIS 3471, *16.

Post-*District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago,* 561 U.S. 742 (2010), Hawaii's ban on butterfly knives cannot withstand constitutional muster. Defendants' witness agreed butterfly knives can be used to defend yourself. *See* Deposition of Robin Nagamine, Exhibit "E", Tr. at 25:3-5. Knives are "in common use today" for the "lawful purpose" of self-defense. Thus, they are protected by the Second Amendment. Butterfly knives as a form of knife

are protected by the Second Amendment. Under any of the tests this Court may apply, Hawaii's ban cannot survive constitutional muster.

As a preliminary matter, butterfly knives are not "dangerous and unusual" weapons. In *United States v Henry*, the Ninth Circuit held:

> An object is "dangerous" when it is "likely to cause serious bodily harm." *Black's Law Dictionary* 451 (9th ed. 2009). Congress defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The machine gun was first widely used during World War I, where it "demonstrated its murderously effective firepower over and over again." [citation omitted] A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. [citation omitted] Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.
>
> A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market.

*United States v. Henry*, 688 F.3d 637, 640, 2012 U.S. App. LEXIS 16615, *6-7, 2012 WL 3217255.

Unlike machine guns, arms such as knives that are typically owned for lawful purposes receive constitutional protection. Knives are widely owned in every state in the Union. Butterfly knives are legal to own in 47 states.[2] Knives are also less

---

[2] Butterfly knives are illegal in New Mexico, the state of Washington and Hawaii.

dangerous than firearms.[3] A study of hospital admissions for abdominal wounds found that abdominal stabbing cases ended in death 3.1 percent of the time, while 9.8 percent of gunshot abdominal wounds were lethal. *See* Harwell Wilson & Roger Sherman, Civilian Penetrating Wounds to the Abdomen, 153 ANNALS OF SURGERY 639, 640 (1961).

An examination of 165 family and intimate assaults (FIA) in Atlanta, Georgia in 1984 found similar results: firearms-associated FIAs were three times more likely to result in death than "FIAs involving knives or other cutting instruments." *See* Linda E. Saltzman, James A. Mercy, Patrick W. O'Carroll et al., Weapon Involvement and Injury Outcomes in Family and Intimate Assaults, 267 JAMA 3043 (1992) [Docket #1-7, PageID 49]. Another study examined all New Mexico's penetrating traumas ("firearm or stabbing injury") "who presented to either the state Level-1 trauma center or the state medical examiner" from 1978 to 1993.

This study found that while nonfatal injury rates were similar for firearms and stabbing (34.3 per 100,000 person-years for firearms, 35.1 per 100,000 person-years for stabbing), firearm fatality rates were much higher than for knives: 21.9 vs. 2.7 respectively. In other words, 39.0 percent of firearm penetrating traumas were fatal, compared to 7.1 percent of knife penetrating traumas; so firearm injuries were 5.5

---

[3] *See also* Deposition of Robin Nagamine, Exhibit "E", Tr. at 27:19-21. Defendants' witness agrees that a "knife is less dangerous than a handgun".

times more likely to result in death than were knife injuries. But not all of the New Mexico penetrating traumas were criminal attacks; 44 percent of the firearms deaths and 57 percent of the knife deaths were suicides. While 8 percent of the firearms deaths were accidents, so were 3 percent of the knife deaths. *See* 123 Cameron Crandall, Lenora Olson, Lynne Fullerton, et al., Guns and Knives in New Mexico: Patterns of Penetrating Trauma, 1978-1993, 4 ACAD. EMERGENCY MEDICINE 265 (1997) [Docket #1-6, PageID 45].

In 2018 information collected by the FBI collected regarding types of weapons used in violent crime showed that firearms were used in 72.7 percent of the nation's murders, 38.5 percent of robberies, and 26.1 percent of aggravated assaults. https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/topic-pages/violent-crime (last visited 12/19/2019). Knives and other edged weapons accounted for approximately 10.7% of murders, 8.4% of robberies and 17.3% of aggravated assaults in 2017. *See Id.*

As Defendants' witness testified, butterfly knives are less dangerous than handguns which the *Heller* court found to be the "quintessential self-defense weapon" and thus not dangerous and unusual. *See District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 2818 (2008). *See* Exhibit "E", Deposition of Robin Nagamine, Tr. at 27:19-21. Like nunchucks, butterfly knives, "as used in the martial arts, are socially acceptable and lawful behavior, especially here in Hawaii

where the oriental culture and heritage play a very important role in society." *See State v. Muliufi* 643 P.2d 546, 548 (1982).

Federal courts have used a similar analysis to find other self-defense arms are protected by the Second Amendment. In *Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018), the United States District Court for the Southern District of New York struck the State of New York's ban on nunchucks as a violation of the Second Amendment. It found nunchucks are protected by the Second Amendment because they are bearable arms that are typically used for lawful purposes. It then struck New York's ban because the State did not have an important government interest in banning these protected arms. A federal court in northern New York used a similar analysis to strike New York State's ban on electric arms. *See Avitabile v. Beach*, 2019 U.S. Dist. LEXIS 47506, __ F. Supp. 3d __, 2019 WL 1302858.

Knives are typically owned for lawful purposes as Courts have overwhelmingly found. The courts that ruled on this issue agree knives designed for self-defense receive constitutional protection. In *State v. Herrmann*, 2015 WI App 97, the Wisconsin Court of Appeals overturned appellant's conviction for possession of a switchblade as unconstitutional. In doing so, the court found that switchblades are protected by the Second Amendment and that Wisconsin's complete ban on their possession was unconstitutional.

In *City of Seattle v. Evans*, 366 P.3d 906 (2015), the Washington Supreme Court evaluated the conviction for carrying a paring knife (a type of kitchen knife). The court found that paring knives are not protected by the Second Amendment because paring knives are not designed to be used for self-defense:

> We hold that the right to bear arms protects instruments that are designed as weapons traditionally or commonly used by law-abiding citizens for the lawful purpose of self-defense. In considering whether a weapon is an arm, we look to the historical origins and use of that weapon, noting that a weapon does not need to be designed for military use to be traditionally or commonly used for self-defense. We will also consider the weapon's purpose and intended function.

*City of Seattle* at 913. Then the court went on to strongly suggest that knives designed for self-defense such as "bowie knives and swords", having been commonly used for self-defense may be considered arms. *See City of Seattle* at 906.

In *State v. DeCiccio*, 105 A.3d 165 (Conn. 2014), the Connecticut Supreme Court overturned the conviction for transport of a dirk knife and a baton as a violation of the defendant's Second Amendment rights. In doing so, the court found that dirk knives and batons are protected by the Second Amendment because they are weapons with traditional military utility that are "typically possessed by law-abiding citizens for lawful purposes"; *Id*. at 625; and not "dangerous and unusual weapons." (internal quotation marks omitted.) *Id*., 627. It then applied intermediate scrutiny and held the conviction unconstitutional.

In *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012), a California Court of Appeals held:

> the dirk or dagger concealed carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or non-switchblade folding or pocketknife. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny.

*Id*. at 1374. Here, since Hawaii completely bans butterfly knives, *Mitchell* supports the position that Hawaii's ban on butterfly knives is unconstitutional.

In *State v. Montalvo*, 162 A.3d 270 (2017), the New Jersey Supreme Court overturned the conviction for possession of a machete. In doing so, the court found that machete-type knives are protected by the Second Amendment and that a conviction for their possession in the home was unconstitutional. The Delaware Supreme Court has also found knives are protected by the Second Amendment. *See State v Griffin*, 2011 WL 2083893, *7 n62, 2011 Del Super LEXIS 193, *26 n62 (Del Super Ct, May 16, 2011) (holding that the "right to keep and bear arms" under the Delaware Constitution extends to knives, and concluding that the Second Amendment right does the same). The Ohio Supreme Court has found knives are protected under their State Constitution. *See City of Akron v Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) (concluding that the "right to keep and bear arms" under the Ohio Constitution extends to knives*). And in *State v. Delgado*, 692 P.2d 610 (1984),

the Oregon Supreme Court found that Oregon's ban on the possession of switchblades violated the Oregon Constitution's right to arms.

Finally, in upholding a criminal conviction for possession of a switchblade, the New Mexico Court of Appeals found that knives are protected by the Second Amendment and upheld that specific ban applying intermediate scrutiny. It did so because:

> the switchblade is 'designed for quick use in a knife fight.' … It is, 'by design and use, almost exclusively the weapon of the thug and the delinquent.' *Precise Imp. Corp. v. Kelly*, 378 F.2d 1014, 1017 (2d Cir. 1967). The purpose of the legislation—protection of the public from the surprise use of a dangerous weapon utilized in large part for unlawful activity—is an important governmental purpose. Prohibiting the possession of this weapon is, of course, substantially related to this narrow, but important, purpose.

*State v. Murillo*, 347 P.3d 284, 289 (2015).

Butterfly knives are highly distinguishable from the type of knife that was at issue in *Murillo.* Plaintiff's expert Burton Richardson has submitted a declaration and an expert report that the butterfly knife was invented by the Filipino people as an arm used for lawful purposes. And it is typically used lawfully as a "self-defense weapon". *See* Declaration of Burton Richardson, Ex. "C", p.4 This evidence distinguishes it from the first contention of the State in *Murillo*.

The second relevant bit of evidence submitted by Mr. Richardson is that butterfly knives are not designed to be opened quickly compared to normal folding knives. "It takes a lot of practice to be able to open the knife quickly and efficiently

with one hand, and even with such training, the Balisong is still slower than the most popular self-defense knives that are available and legal to carry." See Exhibit "D", p. 4. Burton Richardson provided a video with his expert declaration to demonstrate that a butterfly knife opens much slower than a standard folding knife.[4]

As Burton Richardson demonstrates in his video and declaration, the butterfly knife opens far slower than a standard folding knife. The time for the two folding knives that were test were as follows:

Single handed wave Folding knife clipped to pocket: 1.467 seconds;

2 hand opening, folding knife clipped to pocket: 1.200 seconds; and

Whereas the butterfly knife opened in 2.900 seconds.

*See* Expert Report of Burton Richardson at p.5, Exhibit "D".

This testimony is supported by the Hawaii Supreme Court's own observation of the several steps required to open a butterfly knife unlike a folding knife:

> Our examination of the butterfly knife in issue reveals that the knife has a split metal handle which encases a single-edged blade when in a closed position. The knife may be locked in the closed position by using a metal safety clasp at the base of the handle. The clasp keeps the halves of the handle together. In order to open the knife, the clasp must be unlocked; then, both halves are folded away from each other until they meet, exposing the blade. By holding both halves of the handle firmly together, the blade is then in a secured position to be used. The metal clasp, which locks the handle in a closed position, may also be used to lock the handle in the open position.

---

[4] Mr. Richardson's expert video is available here: https://youtu.be/nL4VpEoaabE and is referenced and included as a part of the record. (last visited January 13, 2020).

*In re Interest of Doe*, 73 Haw. 89, 91, 828 P.2d 272, 274, 1992 Haw. LEXIS 32, *4

(finding that a butterfly knife is not a switchblade under Hawaii law).

Since butterfly knives are owned for lawful purposes and open slower than

common folding knives, *Murillo* supports the proposition that Hawaii's ban on

butterfly knives is unconstitutional. But even without the distinctions between

*Murillo* and the instant case, Plaintiffs do not concede that the reasoning in *Murillo*

controls here. Plaintiffs believe that the holdings in *Delgado* and *Herrmann* are

much more persuasive and applicable to the instant case. Further, it does not make

logical sense that an arm less dangerous than a handgun can be banned under the

framework applied in *Heller*.

IV. <u>This Court Should Find Hawaii's Butterfly Knife Ban Categorically
    Unconstitutional</u>

This Circuit employs a two-step test to determine what level of scrutiny to

apply to a Second Amendment challenge.

> A law that imposes such a severe restriction on the core right of self-
> defense that it "amounts to a destruction of the [Second Amendment]
> right," is unconstitutional under any level of scrutiny. *Heller*, 554 U.S.
> at 629 (internal quotations omitted). By contrast, if a challenged law
> does not implicate a core Second Amendment right, or does not place a
> substantial burden on the Second Amendment right, we may apply
> intermediate scrutiny. *See*, e.g., *Chovan*, 735 F.3d at 1138-39; cf. *Heller
> v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1257, 399 U.S. App.
> D.C. 314 (D.C. Cir. 2011) ("[A] regulation that imposes a substantial
> burden upon the core right of self-defense protected by the Second
> Amendment must have a strong justification, whereas a regulation that

imposes a less substantial burden should be proportionately easier to justify.").

*Jackson v. City & County of San Francisco*, 746 F.3d 953, 961, 2014 U.S. App. LEXIS 5498, *14, 2014 WL 1193434.

Here, this Court should strike Hawaii's ban on the ownership of butterfly knives applying the categorical approach. This is because Hawaii's ban categorically bans a type of knife which is protected by the Second Amendment. Two state courts have used similar analysis in striking their state's bans on electric arms. In *Ramirez v. Commonwealth* No. SJC-12340, 2018 Mass. LEXIS 237 (Apr. 17, 2018), the Massachusetts Supreme Judicial Court stated as follows:

> Having received guidance from the Supreme Court ..., we now conclude that stun guns are "arms" within the protection of the Second Amendment. Therefore, under the Second Amendment, the possession of stun guns may be regulated, but not absolutely banned. Restrictions may be placed on the categories of persons who may possess them, licenses may be required for their possession, and those licensed to possess them may be barred from carrying them in sensitive places, such as schools and government buildings. But the absolute prohibition ... that bars all civilians from possessing or carrying stun guns, even in their home, is inconsistent with the Second Amendment and is therefore unconstitutional. *Id* at 337-338.

And in *People v. Yanna*, 824 N.W.2d 241 (Mich. Ct. App. 2012) the Michigan Court of Appeals held that:

> [b]ecause tasers and stun guns do not fit any of the exceptions to the Second Amendment enumerated in *Heller*, we find that they are protected arms. *Heller* found unconstitutional a law which completely banned the possession of protected arms in the home. 554 U.S. at 628–

629. We therefore hold that a complete ban on tasers and stun guns in the home violates the Second Amendment. *See Yanna* at 246.

This Court should apply a categorical approach in finding that a complete ban on butterfly knives is unconstitutional. This was the approach taken in *District of Columbia v. Heller*, 554 U.S. 570 (2008) when confronted with a complete ban on handguns. Pursuant to *Heller I*, "complete prohibition[s]" of Second Amendment rights are always invalid. *Id.* at 629. It is appropriate to strike down such "total ban[s]" without bothering to apply tiers of scrutiny because no such analysis could ever sanction obliterations of an enumerated constitutional right. *Id.* Per *Heller*, this Court could strike down Hawaii's butterfly knife ban without the need to look to scrutiny analysis. This is the approach that many other courts have taken in other contexts when dealings with severe restrictions on the Second Amendment.

The State Supreme Court of New Jersey also applied no scrutiny test in finding a conviction for possession of a machete in the home violated the litigant's Second Amendment right. *See State v. Montalvo*, 077331, 2017 WL 2471030 (N.J. June 8, 2017). In *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171 (D. Mass. 2014) and *Richmond v. Peraino*, 128 F. Supp. 3d 415 (D. Mass. 2015), the court found that a ban on firearms ownership based on decades old marijuana convictions was unconstitutional without the need to apply scrutiny.

The court in *Morris v. United States Army Corps of Eng'rs,* 60 F. Supp. 3d 1120 (D. Idaho 2014) found the U.S. Corps of Engineers' ban on firearms carry for

self-defense was categorically invalid. The 7th circuit also invalidated Illinois' total ban on any carrying of firearms in public as categorically unconstitutional. *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012). The Illinois Supreme Court followed suit in *People v. Aguilar*, 2 N.E.3d 321, 327 (Ill. 2013) and found the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) of the Illinois aggravated unlawful use of weapons statute violated the Second Amendment without a scrutiny analysis. Same as to the District of Colombia's ban on handgun carry in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014). And again, later regarding DC's licensing scheme put in place post-*Palmer* in *Wrenn v. District of Columbia*, 864 F.3d 650, 665 (D.C. Cir. 2017). This Court should follow the lead of these Courts in finding that Hawaii's complete ban on butterfly knives is unconstitutional without the need to look to tiered scrutiny.  However, if a level of scrutiny is required, Ninth Circuit precedent suggests that strict scrutiny should be applied.

    a.  <u>Strict Scrutiny Should Apply</u>

Post-*Heller*, the Ninth Circuit has developed a body of case law which supports the application of strict scrutiny where a law places a substantial burden on the core right to self-defense of a law-abiding person. This is the implication of the Ninth Circuit's holding in *Fisher v Kealoha*.  "Unlike Fisher, however, Chovan never argued that section [18 U.S.C.] 922(g)(9) was unconstitutional as applied to him because California (Chovan's state of conviction) provided too few of the

restoration mechanisms listed in section 921(a)(33)(B)(ii). *See* [*United States v. Chovan,* 735 F.3d 1127, 1137-42 (9th Cir. 2013)]. Indeed, in *Chovan*, we applied 'intermediate' rather than 'strict' judicial scrutiny in part because section 922(g)(9)'s 'burden' on Second Amendment rights was 'lightened' by those mechanisms." *See Fisher v. Kealoha*, 855 F.3d 1067, 1071, 2017 U.S. App. LEXIS 8007, *9, 2017 WL 1753271. Similarly, if this Court decides not to apply a categorical approach, it should apply strict scrutiny. This position finds support in other Ninth Circuit precedent. In reviewing a ban on the sale, but not possession, of hollow points in *Jackson v. City & County of San Francisco,* the Ninth Circuit stated:

> A ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense. The regulation in this case limits only the manner in which a person may exercise Second Amendment rights by making it more difficult to purchase certain types of ammunition. This is akin to a content-neutral time, place, and manner restriction, such as a regulation which prevents a person from owning a firearm with an obliterated serial number while not barring the possession of an otherwise lawful firearm. *See Marzzarella*, 614 F.3d at 97. Further, section 613.10(g) leaves open alternative channels for self-defense in the home. Jackson may either use fully-jacketed bullets for self-defense or obtain hollow-point bullets outside of San Francisco's jurisdiction. Because section 613.10(g) neither regulates conduct at the core of the Second Amendment right nor burdens that right severely, we review it under intermediate scrutiny.

*Jackson v. City & County of San Francisco*, 746 F.3d 953, 968, 2014 U.S. App. LEXIS 5498, *34-35, 2014 WL 1193434.

Here, Hawaii's butterfly knife ban is more analogous to a content-based speech restriction than the one at issue in *Jackson* because it is a ban on possession.

Thus, strict scrutiny applies, and the State of Hawaii must demonstrate a compelling

government interest to banning these arms that is narrowly tailored to achieve that

interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707,

718 (1981) ("The state may justify an inroad on religious liberty by showing that it

is the least restrictive means of achieving some compelling state interest."). This is

the approach that was taken by the Court in *Bateman v. Perdue* 881 F.Supp.2d 709

(2012) in evaluating North Carolina's ban on carrying firearms during an

emergency:

> There is no dispute that defendants have a compelling interest in public
> safety and general crime prevention. *See Schenck v. Pro-Choice
> Network of Western New York,* 519 U.S. 357, 376, 117 S.Ct. 855, 137
> L.Ed.2d 1 (recognizing "significant governmental interest in public
> safety"). "`[P]rotecting the community from crime' by keeping guns out
> of the hands of dangerous persons is an important governmental
> interest." *United States v. Carter,* 669 F.3d 411, 417 (2012).
>
> The problem here is that the emergency declaration statutes, are not
> narrowly tailored to serve the government's interest in public safety.
> They do not target dangerous individuals or dangerous conduct. Nor do
> they seek to impose reasonable time, place and manner restrictions by,
> for example, imposing a curfew to allow the exercise of Second
> Amendment rights during circumscribed times. Rather, the statutes here
> excessively intrude upon plaintiffs' Second Amendment rights by
> effectively banning them (and the public at large) from engaging in
> conduct that is at the very core of the Second Amendment at a time
> when the need for self-defense may be at its very greatest. *See
> Heller,* 128 S.Ct. at 2799 ("[A]mericans understood the `right of self-
> preservation' as permitting a citizen to `repe[l] force by force' when `the
> intervention of society in his behalf, may be too late to prevent an
> injury.'" (quoting 1 Blackstone's Commentaries 145-146, n.42 (1803))

(second alteration in original)). Consequently, the emergency declaration laws are invalid as applied to plaintiffs.

This Court should apply strict scrutiny as well because Hawaii's butterfly ban intrudes upon Plaintiffs' Second Amendment rights by effectively banning them (and the public at large) from engaging in conduct that is at the very core of the Second Amendment. A district court in Louisiana also applied strict scrutiny in striking a law banning firearms from the parking lot of any store that sells alcohol. *See Taylor v. City of Baton Rouge,* 39 F. Supp. 3d 807 (M.D. La. 2014).

In *Ezell*, the 7th circuit applied "not quite strict scrutiny" to Chicago's prohibition on live-fire training ranges—in part because Chicago required residents to undergo such training to obtain a license to possess firearms at all. *Ezell v. City of Chicago*, 651 F.3d 684, 689 (7th Cir. 2011). It found:

> [t]o be appropriately respectful of the individual rights at issue in this case, the City bears the burden of establishing a strong public-interest justification for its ban on range training: The City must establish a close fit between the range ban and the actual public interests it serves, and also that the public's interests are strong enough to justify so substantial an encumbrance on individual Second Amendment rights. Stated differently, the City must demonstrate that civilian target practice at a firing range creates such genuine and serious risks to public safety that prohibiting range training throughout the city is justified. *Id*. at 708-709.

A district court in *Hatfield v. Sessions,* No. 3:16-cv-00383-JPG-RJD, 2018 U.S. Dist. LEXIS 70431 (S.D. Ill. Apr. 26, 2018) followed this approach in finding 18 U.S.C. § 922(g)(1) unconstitutional as applied to the litigant. Another district

court enjoined the City of Chicago's ban on guns stores using this approach in *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) And in *Ezell v. City of Chicago* ("Ezell II"), 846 F.3d 888 (7th Cir. 2017), the 7th Circuit enjoined Chicago's zoning regulations at issue in that case which so "severely limit[ed] where shooting ranges may locate" that "no publicly accessible shooting range yet exist[ed] in Chicago." *Id*. at 894. As a result, the zoning regulations, "though not on their face an outright prohibition of gun ranges, nonetheless severely restrict the right of Chicagoans to train in firearm use at a range." *Id.*

Hawaii has similarly curtailed Plaintiffs' Second Amendment rights. This Court should apply true strict scrutiny and find that the State of Hawaii does not have a compelling governmental interest in banning butterfly knives. And even if it does, a complete ban on butterfly knives is not narrowly tailored in achieving that goal. In the alternative, it should employ the *Ezell* approach and find Hawaii has not demonstrated such a risk to public safety that prohibiting butterfly knife ownership throughout the State is justified. However, the State of Hawaii's ban is so nonsensical that even if intermediate scrutiny applies this Court should rule in Plaintiffs' favor.

    b.  <u>Under Intermediate Scrutiny Hawaii's Butterfly Knife Ban is Unconstitutional</u>

Even if this Court finds intermediate scrutiny is appropriate to the instant case, Hawaii's ban on butterfly knives cannot withstand constitutional muster. Our intermediate scrutiny test under the Second Amendment requires that (1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) (quoting *Chovan*, 735 F.3d at 1139). Under the second prong "intermediate scrutiny does not require the least restrictive means of furthering a given end." *Id*. at 827 (quoting *Jackson*, 746 F.3d at 969. *See Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1120, 2017 U.S. Dist. LEXIS 101549, *28, 2017 WL 2813727). In enjoining Hawaii's ban on possession of firearms by resident aliens, Judge Seabright recently held:

> Nevertheless, HRS § 134-2(d), as applied to Fotoudis fails to "pass constitutional muster regardless of whether intermediate scrutiny or strict scrutiny applies." *Fletcher*, 851 F. Supp. 2d at 303. *See United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (applying intermediate scrutiny — "substantially related to an important government objective"— to a Second Amendment challenge); United *States v. Reese*, 627 F.3d 792, 800-02 (10th Cir. 2010) (observing that Heller "indicated only that the rational basis test is not appropriate" and that "we must apply some level of heightened scrutiny"). Here, assuming § 134-2(d)'s general permit requirement implements an "important government objective" (intermediate scrutiny) or a "compelling state interest" (strict scrutiny), it is neither "substantially related" nor "narrowly tailored" to such interests *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144, 2014 U.S. Dist. LEXIS 130525, *16-17

The same reasoning should apply here. Even under intermediate scrutiny there simply is not an important government interest in banning butterfly knives when *Heller* holds that the government cannot ban handguns. And even if there is a government interest, a complete ban is not a reasonable fit.  In preliminarily enjoining a law banning the ownership of magazines capable of holding more than ten rounds, Judge Benítez found that a complete ban did not have a reasonable fit to the government interest of public safety. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1134, 2017 U.S. Dist. LEXIS 101549, *64-68, 2017 WL 2813727. Judge Benítez later affirmed this decision at the summary judgement stage. *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 2019 U.S. Dist. LEXIS 54597.  A similar seven round load limit was struck by the Second Circuit in *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015).

The State of Hawaii simply has not and cannot present evidence that a complete ban on butterfly knives protects public safety. This is because, among other things, as demonstrated above, a butterfly knife opens significantly more slowly than a common folding knife that is legal to carry in Hawaii.  In any event, many Courts have struck similar or less restrictive laws based on intermediate scrutiny.  The District Court for the Northern Marianas Islands recently struck several of its weapons laws applying intermediate scrutiny including its ban on "assault weapons".  *See Murphy v. Robert Guerrero*, et al., 1:14-CV-00026, 2016 WL

5508998, (D.N. Mar. Is. Sept. 28, 2016).  In *THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JULIO CHAIREZ, Appellee*., 2018 IL 121417, 2018 WL 652814, the Illinois Supreme Court found that found the State of Illinois' ban on carrying a handgun within 1000 feet of public parks violated the Second Amendment.  In *Fletcher v. Haas*, 851 F. Supp. 2d 287 (D. Mass. 2012), the Court applied intermediate scrutiny and struck Massachusetts' respective bans on permanent resident aliens owning firearms.

The Wisconsin Court of Appeals in *State v. Herrmann,* 2015 WI App 97, 366 Wis. 2d 312, 873 N.W.2d 257 found a complete ban on switchblades failed intermediate scrutiny. ("Consequently, while banning possession of switch-blades in other settings might be substantially related to the State's cited objective of protecting the public from surprise attacks, prohibiting individuals from possessing switchblades in their own homes for their own protection is not").

In *Tyler v. Hillsdale Cnty. Sheriff's Dep't,* 837 F.3d 678 (6th Cir. 2016) (en banc) the Sixth Circuit sitting *en banc* ruled that a person who "has been adjudicated intellectually disabled" or "has been committed to a mental institution" is not permanently barred from possessing firearms. Judge Julia Gibbons wrote that under intermediate scrutiny, the burden of justification is demanding and it rests entirely on the State and "in discharging this burden, the government can rely on a wide range of sources, including legislative history, empirical evidence, case law, and

even common sense, but it may not 'rely upon mere anecdote and supposition'" (*Tyler*, No. 13-1876, slip op. at 20). In *Tyler*, according to Judge Gibbons, the government had not presented sufficient evidence of the continued risk presented by persons who were previously committed (*id.* p. 24). Thus, the statute, as applied, given the evidence supplied, failed intermediate scrutiny.

In *Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (en banc) the Third Circuit sitting *en banc* applied intermediate scrutiny in finding 18 U.S.C. § 922(g)(1) unconstitutional as applied to the litigants:

> But whether we apply intermediate scrutiny or strict scrutiny…the Government bears the burden of proof on the appropriateness of the means it employs to further its interest. [citations omitted] Here the Government falls well short of satisfying its burden—even under intermediate scrutiny. The record before us consists of evidence about the Challengers' backgrounds, including the time that has passed since they last broke the law. It contains no evidence explaining why banning people like them (i.e., people who decades ago committed similar misdemeanors) from possessing firearms promotes public safety. *Id* at 353-354.

*Keyes v. Sessions,* 282 F. Supp. 3d 858 (M.D. Pa. 2017) follows *Binderup* and is an as-applied challenge to § 924(g)(4). There, the court held "[w]e have been presented with no evidence to indicate that disarming those who went through a period of mental illness and suicide attempts over a decade ago and who have regularly carried firearms in their professional capacity since that time reasonably fits within the governmental interest to promote safety. As such, 18 U.S.C. § 924(g)(4) cannot withstand intermediate scrutiny in the face of Keyes' as-applied

challenge." *Id* at 878.  Recently, the D.C. Court of Appeals in *Heller v. District of Columbia*, 419 U.S. App. D.C. 287, 801 F.3d 264 (2015) (*Heller III*) struck four registration laws applying intermediate scrutiny.  There, the Court found that a requirement that an individual brings his or her firearm to the police department to register it; a requirement that individuals re-register their firearms every three years and pay additional fees; a requirement that individuals pass a knowledge test of local firearm laws to register any firearm; and a prohibition against registering more than one handgun in a 30-day period. *Id.* at 281.

The D.C. Court of appeals enjoined the knowledge test requirement "[b]ecause the District has offered no evidence from which the court can infer it reasonably concluded that knowledge of its gun laws, as shown by passing its test, will promote public safety, on this record the requirement must be held constitutionally invalid." *Id.* at 279.

Similarly, the State of Hawaii cannot offer evidence from which this Court can reasonably infer that the State concluded public safety will be promoted by banning the ownership of butterfly knives. And even if it can, a complete ban is not a reasonable fit to fulfill that government interest. This Court should find that Hawaii law is unconstitutional even if it decides to apply intermediate scrutiny.

V.     Conclusion

Post-*Heller* and *McDonald,* Hawaii's ban on butterfly knives is unconstitutional.  There is no government interest in maintaining this ban. For the foregoing reasons, including the declarations of Plaintiffs and Mr. Burton Richardson, and  the documents attached to the Separate Concise Statement of Facts, and the Deposition of Robin Nagamine this Court should enjoin the State of Hawaii's ban on butterfly knives and declare the ban on the ownership of butterfly knives unconstitutional.

Respectfully submitted, this the 14<u>th</u> day of January, 2020.

*/s/ Alan Beck*
Alan Alexander Beck

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
*\*Admitted Pro Hac Vice*