IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW TETER and JAMES GRELL,<br><br>    Plaintiffs,<br><br>    v.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii, and AL CUMMINGS, in his Official Capacity as the State Sheriff Division Administrator,<br><br>    Defendants. | Civil No. CV19-00183-ACK-WRP<br><br>MEMORANDUM IN SUPPORT OF MOTION |

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | i-iii |
| I. | INTRODUCTION | 1 |
| II. | FACTS | 1 |
| | A. The Law and Legislative History | 1 |
| | B. Butterfly Knife Origin and Brandishing | 3 |
| III. | H.R.S. § 134-53 DOES NOT VIOLATE THE SECOND AMENDMENT | 5 |
| | A. Butterfly Knives Fall Within The Exception For Dangerous and Unusual Weapons And Are Not Protected by the Second Amendment | 6 |
| | B. Hawaii's Ban On Butterfly Knives Survives Intermediate Scrutiny | 12 |
| IV. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page

Cases

*Carson v. State,*
247 S.E.2d 68, 73 (Ga. 1978 ................................................................. 11

*Crowley Cutlery Co. v. United States,*
849 F.2d 273, 278 (7th Cir. 1988) ............................................................. 8

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................................... 6,7,11,12

*English v. State,*
35 Tex. 473 (1871) ..................................................................................... 7,8

*In Interest of Doe,*
73 Haw. 89, 828 P.2d 272 (1992) ......................................................... 2,10

*Jackson v. City & County of San Francisco,*
746 F.3d 953 (9th Cir. 2014) ................................................................. 5,6,12

*Lacy v. State,*
903 N.E.2d 486, 490 (Ind. Ct. App. 2009) ........................................... 8,11,13

*Republic of Hawaii v. Clark,*
10 Haw. 585, 587-88 (1897) ..................................................................... 11

*State v. LaChapelle,*
451 N.W.2d 689, 691 (Neb. 1990) ........................................................... 11

*State v. Murillo,*
347 P.3d 284 (N.M. Ct. App. 2015) ..................................................... 13,14

*United States v. Chovan,*
735 F.3d 1127 (9th Cir. 2013) ................................................................... 6,7

*United States v. Henry*,
688 F.3d 637 (9th Cir. 2012)..............................................................................7,11

*United States v. McCartney*,
357 F. App'x 73, 76 (9th Cir. 2009) ........................................................................7

*United States v. Nelsen*,
859 F.2d 1318 (8th Cir. 1988)..................................................................................9

Federal Statutes

*Federal Anti-Switchblade Act*, 15 U.S.C. §§ 1241-1245 ...............................8

*Federal Switchblade Act*, 15 U.S.C. § 1241-1242 (2013) ............................14

State Statutes

H.R.S.§ 134-52...................................................................................................2,10

H.R.S.§ 134-53......................................................................................1,2,5,10,12,13

Other Authorities

Second Amendment ......................................................................................5,6,12,13

S. Rep. 85-1980, 85th Cong. 2d. Sess. (1958), 1958 U.S.C.C.A.N. 3435......8

S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal 1558 .............2,9,10

1999 Haw. Sess. Laws Act 285, § 1........................................................................10

1852 Haw. Sess. Laws Act of May 25, 1852, § 1 .........................................11

*Knives Deal*, https://www.knivesdeal.com/the-balisong-knife-here-is-everything-you-need-to-know (last visited January 14, 2020) ..................4

*Blade Magazine*, https://blademag.com/knife-history/history-the-disputed-origins-of-the-butterfly-knife (last visited January 14, 2020). ......................................4

*Wikipedia*, https://en.wikipedia.org/wiki/Butterfly_knife
(last visited January 14, 2020). ...................................................................... 4

*The Art of the Butterfly Knife*,
http://www.butterflyknifebutterflyknife.com/Butterfly_Knife_Legal_Status.html
(last visited January 14, 2020) ....................................................................... 4

*Fast opening of BALISONG aka BUTTERFLY KNIFE*, YouTube (Dec 28, 2015),
https://www.youtube.com/watch?v=Q-xd-kZHttU ........................................ 5

*BUTTERFLY KNIFE WORLDS MOST RELIABLE AND FASTEST WAY TO OPEN A BALISONG*, YouTube (Sep 5, 2016),
https://www.youtube.com/watch?v=2Wdp75DoaQM ..................................... 5

*Very Fast Open balisong. Butterfly knife flipping tutorial*, YouTube (Jun 12, 2019),
https://www.youtube.com/watch?v=-Imz9XMX56A ...................................... 5

*Balisong Fast Opening For Fighting*, YouTube (Oct 30, 2017),
https://www.youtube.com/watch?v=gKMyWxjXOAY .................................. 5

*Balisong Instructional - Fast Draw*, YouTube (Feb 11, 2008), https://www.youtube.com/watch?v=fNqXVlSQPfs ......................................................... 5

*Really Fast Butterfly Knife Opening!*, YouTube (Mar 3, 2017),
https://www.youtube.com/watch?v=-6X1eV_4bQU. ..................................... 5

I.   INTRODUCTION

The Plaintiffs allege that Defendants CLARE E. CONNORS, in her official capacity as the Attorney General of the State of Hawaii, and AL CUMMINGS, in his official capacity as the State Sheriff Division Administrator (hereinafter "Defendants"), in their official capacity and responsibility to enforce Hawaii laws, violated their Second Amendment constitutional rights by preventing them from acquiring, possessing, carrying, and using butterfly knives. They seek an injunction preventing enforcement against them of Hawaii Revised Statutes ("HRS") § 134-53, pertaining to butterfly knives. They also allege that HRS § 134-53 is unconstitutional, and seek declaratory judgment that HRS § 134-53 violates the Second Amendment.

Defendants deny that HRS § 134-53 is unconstitutional and violative of the Second Amendment, and that Plaintiffs are entitled to the relief that they seek.

II.  FACTS

   A.   The Law and Legislative History.

Butterfly knives have been banned in Hawaii since 1999. *See* HRS § 134-53, attached as Exhibit A. Under the law, it is a crime to manufacture, sell, transfer, possess, or transport any butterfly knife, or to knowingly possess or intentionally use or threaten to use a butterfly knife while engaged in the commission of a crime. According to their Complaint, Plaintiffs claim that but for the law, they would

"acquire, possess, carry and where appropriate use a butterfly knife to protect himself, his home, his family and business." *See* ECF 1, Paragraphs 94 and 102. Neither Plaintiff alleges any facts that they have been charged with a crime under HRS § 134-53, therefore, their only claim in this case is a facial challenge to the constitutional validity of HRS § 134-53.

In 1999, the Hawaii State Legislature passed HRS § 134-53 in response to the Hawaii Supreme Court case of *In Interest of Doe*, 73 Haw. 89, 828 P.2d 272 (1992). A copy of the case is attached as Exhibit B. The *Doe* court also found that a butterfly knife did not fall within the definition of a "switchblade knife" and was therefore not banned under HRS § 134–52. *See* HRS § 134–52, attached as Exhibit C. In light of *Doe*, the Legislature specifically sought to prohibit butterfly knives by enacting HRS § 134-53. The Legislature's Senate Committee on Judiciary noted in its Standing Committee Report No. 1389, in 1999 Senate Journal, at 1558-59 ("S. Stand. Comm. Rep. No. 1389"):

> Your Committee finds that certain types of knives, particularly switchblade and butterfly knives, are associated with gang activity. Your Committee believes that butterfly knives (also known as balisongs or gravity knives) appear to be covered within the statutory definition of switchblade knives. However, your Committee further finds that although switchblade knives are presently illegal, stores openly sell, and minors can readily purchase, butterfly knives.
> Your Committee is aware, however, that the Hawaii Supreme Court, in In the Interest of John Doe, (FC-J No. 91-55223), has held that a butterfly knife does

> not have a blade that opens automatically by operation of inertia, gravity, or both, and thus is not a switchblade knife under section 134-52, Hawaii Revised Statutes. The court reasoned that the legislative history of section 134-52 did not expressly indicate whether the legislature intended to include butterfly knives under this statute. Therefore, it is your Committee's intent to clarify that butterfly knives should be treated in the same manner as switchblade knives.
>
> Testimony in support of this measure was submitted by the Department of the Prosecuting Attorney of the City and County of Honolulu, the Honolulu Police Department, and a private citizen. Testimony in opposition to this measure was submitted by the Office of the Public Defender and the Pedoy School of Escrima.

*See* Exhibit D, attached.

The Legislature received testimony in favor of and against the proposed law. In testimony in favor of the law, the Honolulu Police Department pointed out: "Our Gang Detail has noticed an increasing trend in minors and gang members armed with knives and daggers. Butterfly knives are preferred as they are easy to conceal and are more intimidating when brandished." *See* Letter dated March 16, 1999, to The Honorable Avery B. Chumbley, Co-Chair, The Honorable Matthew M. Matsunaga, Co-Chair and Members Committee on Judiciary, The Senate, from George McKeague, Captain, Criminal Investigation Division, Honolulu Police Department. *See* Exhibit E, Legislative History at SOH 00025, attached.

    B.    <u>Butterfly Knife Origin and Brandishing.</u>

The origin of the butterfly knife or balisong appears unclear. Plaintiffs claim that the butterfly knife was first created in the Philippines in 800 CE, but acknowledge that "there is no documentation or archeological evidence to back this." *See* ECF 1, Paragraph 79. The origin appears debatable, with France also cited as a place of origin. *Knives Deal*, https://www.knivesdeal.com/the-balisong-knife-here-is-everything-you-need-to-know (last visited January 15, 2020). *See* attached Exhibit F, attached. *See also Blade Magazine*, https://blademag.com/knife-history/history-the-disputed-origins-of-the-butterfly-knife (last visited January 15, 2020). *See* attached Exhibit G, attached.

Interestingly, it appears that the butterfly knife has been outlawed in the Philippines for similar reasons it was outlawed in Hawaii in 1999. "In the Philippines, it is generally illegal to carry one without identification or a proper permit in the streets of the capital because of their prevalent use in crimes and altercations." *Wikipedia*, https://en.wikipedia.org/wiki/Butterfly_knife (last visited January 14, 2020). *See* attached Exhibit H, attached. *See also The Art of the Butterfly Knife*, http://www.butterflyknifebutterflyknife.com/Butterfly_Knife_Legal_Status.html (last visited January 15, 2020) ("Because of their prevalent use in altercations and crimes, it is illegal to carry a Butterfly knife Butterfly knife without identification or a proper permit in the capital streets of Manila."). *See* attached Exhibit I, attached.

A butterfly knife can be opened and ready for use very quickly. *See Fast opening of BALISONG aka BUTTERFLY KNIFE*, YouTube (Dec 28, 2015), https://www.youtube.com/watch?v=Q-xd-kZHttU; *BUTTERFLY KNIFE WORLDS MOST RELIABLE AND FASTEST WAY TO OPEN A BALISONG*, YouTube (Sep 5, 2016), https://www.youtube.com/watch?v=2Wdp75DoaQM; *Very Fast Open balisong. Butterfly knife flipping tutorial*, YouTube (Jun 12, 2019), https://www.youtube.com/watch?v=-Imz9XMX56A; *Balisong Fast Opening For Fighting*, YouTube (Oct 30, 2017), https://www.youtube.com/watch?v=gKMyWxjXOAY; *Balisong Instructional - Fast Draw*, YouTube (Feb 11, 2008), https://www.youtube.com/watch?v=fNqXVlSQPfs; *Really Fast Butterfly Knife Opening!*, YouTube (Mar 3, 2017), https://www.youtube.com/watch?v=-6X1eV_4bQU.

III.  HRS § 134-53 DOES NOT VIOLATE THE SECOND AMENDMENT

Hawaii's law banning butterfly knives, HRS § 134-53, does not violate the Second Amendment. There are no Ninth Circuit cases directly on point. But even assuming for the sake of argument that knives could be considered "arms" under the Second Amendment, butterfly knives would not be constitutionally protected.

For Second Amendment cases, the Ninth Circuit follows a two-step analysis. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014). "The two-step inquiry . . . '(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an

appropriate level of scrutiny.'" *Id.* In the first step, the question is "whether the challenged law burdens conduct protected by the Second Amendment based on a 'historical understanding of the scope of the Second Amendment right,' or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'" *Id.* (citations and brackets omitted). "If a prohibition falls within the historical scope of the Second Amendment, [the court] must then proceed to the second step of the Second Amendment inquiry to determine the appropriate level of scrutiny." *Id.*

When ascertaining the appropriate level of scrutiny, the court considers: "(1) 'how close the law comes to the core of the Second Amendment right' and (2) 'the severity of the law's burden on the right.' *Id.* at 960-61. If a challenged law does not implicate a core Second Amendment right or does not place a substantial burden on the Second Amendment right, then intermediate scrutiny may be applied. *Id.* at 961. Intermediate scrutiny "requires (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013).

### A. Butterfly Knives Fall Within the Exception for Dangerous and Unusual Weapons and are not Protected by the Second Amendment.

The first step in the analysis turns on whether butterfly knives fall within the "dangerous and unusual weapons" exception. *District of Columbia v. Heller*, 554

U.S. 570 (2008), expressly stated that "the right [secured by the Second Amendment] [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. *Heller* recognized the "important limitation on the right to keep and carry arms" that "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627. "[T]he Second Amendment right . . . extends only to certain types of weapons." *Id.* at 623. "[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. If a weapon falls within the exception, then it is not protected by the Second Amendment and the analysis ends. If it does not fall within the exception, then the analysis proceeds to the second step. A weapon falls within the dangerous and unusual weapons exception if it is "dangerous and unusual" and if it is not "typically possessed by law-abiding citizens for lawful purposes." *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012).

The Ninth Circuit has applied this exception to machine guns, silencers, grenades, and directional mines, on the ground that these weapons are not "typically possessed by law-abiding citizens for lawful purposes." *Id.* at 640; *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009). Furthermore, *English v. State*, 35 Tex. 473 (1871), a case that was expressly cited by the Supreme Court in *Heller*, 554 U.S. at 627, in support of the dangerous and unusual

weapons exception, upheld a statute banning ". . . dirks, daggers, slungshots, swordcanes, spears, brass-knuckles and bowie knives." *English*, 35 Tex. at 474.

Switchblades have also been held not to be typically possessed by law-abiding citizens for lawful purposes. In *Lacy v. State*, 903 N.E.2d 486, 490 (Ind. Ct. App. 2009), the Indiana Court of Appeals upheld the constitutionality of Indiana's ban on switchblades. The *Lacy* court concluded that "we cannot say that switchblades are typically possessed by law-abiding citizens for self defense purposes." *Id.* at 492. The court cited the "Federal Anti-Switchblade Act" (aka the Federal Switchblade Act), which has long made importation of switchblades illegal under federal law. *Id.* (citing 15 U.S.C. §§ 1241-1245). The *Lacy* court also cited the legislative history of the federal act, which provided that the "problem of the use of switchblades and other quick opening knives for criminal purposes has become acute during recent years – particularly by juvenile delinquents in large urban areas," and that "police chiefs, almost without exception, indicate that these vicious weapons are on many occasions the instruments used by juveniles in the commission of robberies and assaults." *Id.* (quoting S. Rep. 85-1980, 85th Cong. 2d. Sess. (1958), 1958 U.S.C.C.A.N. 3435, 3436-3437).

The Seventh Circuit, in *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir. 1988), held that "[s]witchblade knives are more dangerous than regular knives because they are more readily concealable and hence more suitable

for criminal use." The Eighth Circuit noted in *United States v. Nelsen*, 859 F.2d 1318 (8th Cir. 1988):

> Congress stated its reasons for adopting the [Switchblade Knife Act] quite plainly. Switchblade knives were increasingly being used for criminal purposes, especially by young gang members. Some states had tried to regulate or ban the knives, but easy access to knives from other states through the mail order business continually frustrated such efforts. Congress decided to stop this interstate flow totally by using the commerce power. *See* S.Rep. No. 1980, 1958 U.S.Code Cong. & Admin.News at 3436–37.

*Nelsen*, 859 F.2d at 1320.

Butterfly knives are highly analogous to switchblades in that both are concealable. The blade for both types of knives fits into the handle and therefore these knives are able to be hidden in clothing. Both types of knives can be deployed quickly. Strictly speaking, a switchblade generally uses a spring mechanism to open the blade, while a butterfly knife uses gravity or inertia to flip the blade open.[1] Both types of knives are popular with criminals and gang members because of these features. *See* S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558-59 (switchblades and butterfly knives are associated with gang activity). Therefore, butterfly knives, like switchblades, are "unusual" in that they are not "typically possessed by law-abiding citizens for lawful purposes".

---

[1] Some jurisdictions, however, more broadly define switchblades to include mechanisms that rely on gravity or inertia to open the blade as well. *See infra* footnote 2.

The legislative history of HRS § 134-53 supports treating butterfly knives analogously to switchblades. In *In re John Doe, born August 3, 1977*, 73 Haw. 89, 95, 828 P.2d 272, 275-76 (1992), the Hawaii Supreme Court held that butterfly knives do not fall within the statutory definition of switchblades in HRS § 134-52. In response, the Hawaii legislature enacted a new and separate section, HRS § 134-53, specifically prohibiting possession of butterfly knives. 1999 Haw. Sess. Laws Act 285, § 1. The Senate Judiciary Committee noted: "Your Committee finds that certain types of knives, particularly switchblades and butterfly knives, are associated with gang activity. . . . However, your Committee further finds that although switchblade knives are presently illegal, stores openly sell, and minors can readily purchase, butterfly knives. . . . Therefore, it is your Committee's intent to clarify that ***butterfly knives should be treated in the same manner as switchblade knives***." S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558-59 (emphasis added).[2]

It should also be noted that Hawaii has long regulated possession of "deadly weapons." In 1852, the Kingdom of Hawaii enacted a statute making it a criminal

---

[2] The relationship between butterfly knives and switchblades is even closer in some jurisdictions. The Sixth Circuit interpreted the definition of switchblades in the federal Switchblade Knife Act as encompassing butterfly knives. *Taylor v. United States*, 848 F.2d 715, 720, (6th Cir. 1988). California and New Mexico have also applied their laws regulating switchblades to butterfly knives. *People ex rel. Mautner v. Quattrone*, 260 Cal. Rptr. 44, 45-48 (Cal. Ct. App. 1989); *State v. Riddall*, 811 P.2d 576, 577-80 (N.M. Ct. App. 1991).

offense for "[a]ny person not authorized by law" to "carry, or be found armed with, any bowie-knife, sword-cane, pistol, air-gun, slung-shot or other deadly weapon[.]" 1852 Haw. Sess. Laws Act of May 25, 1852, § 1 at 19; *see also Republic of Hawaii v. Clark*, 10 Haw. 585, 587-88 (1897). Therefore, the regulation of dangerous weapons, including bladed weapons that are concealable (e.g., sword-canes and bowie-knives), is a longstanding prohibition in Hawaii. *See Heller*, 554 U.S. at 626 ("longstanding prohibitions" not affected by *Heller*).

Butterfly knives and switchblades are also clearly "dangerous" in that people can be severely injured or killed by them. "An object is 'dangerous' when it is 'likely to cause serious bodily harm.'" *Henry*, 688 F.3d at 640 (quoting *Black's Law Dictionary* 451 (9th ed.2009)). And the fact that butterfly knives and switchblades are concealable means that they are more dangerous than ordinary knives, much like the way sawed-off shotguns are more dangerous than ordinary firearms. *See Heller*, 554 U.S. at 625 (short-barreled shotguns as dangerous and unusual weapons); *Lacy*, 903 N.E.2d at 492 n.3 (finding that ban on sawed-off shotguns is analogous to ban on switchblades); *Carson v. State*, 247 S.E.2d 68, 73 (Ga. 1978) (sawed-off shotgun statute upheld because they are "of a size such as can easily be concealed and which are adapted to and commonly used for criminal purposes"); *State v. LaChapelle*, 451 N.W.2d 689, 691 (Neb. 1990) (upholding ban

on machine guns, short rifles, and short shotguns because they are "readily concealed" and used for "a criminal purpose").

Consequently, the reasons supporting the ban on butterfly knives are the same as those supporting the ban on switchblades. Both are more dangerous than ordinary knives and are not "typically possessed by law-abiding citizens for lawful purposes". Therefore, they are dangerous and unusual weapons and do not fall within the scope of the Second Amendment.

B.     <u>Hawaii's Ban on Butterfly Knives Survives Intermediate Scrutiny.</u>

HRS § 134-53 does not implicate a core Second Amendment right because the core of the Second Amendment is self-defense within the home. *Jackson*, 746 F.3d at 963-64. Clearly, butterfly knives are not a "quintessential self-defense weapon" for defense in the home, like handguns. *See Heller*, 554 U.S. at 629. Furthermore, "regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Jackson*, 746 F.3d at 961. Here, HRS § 134-53 does not interfere with the use of other types of knives, or any other instruments, for self-defense. Only butterfly knives, specifically defined as "a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity, or both," are prohibited. Therefore, intermediate scrutiny should be applied.

The government's objective in banning butterfly knives was to protect public safety by reducing access to such weapons by criminal gang members, which is clearly a "significant, substantial, or important" state interest. And there is a "reasonable fit" between the challenged regulation and the asserted objective in that HRS § 134-53 bans only butterfly knives, which are specifically defined as "a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity, or both[.]" It is not a complete ban on all knives. *See Lacy*, 903 N.E.2d at 492 (Indiana switchblade law upheld because it is not a complete ban on all knives but only "knives that open automatically or may be propelled . . . by hand pressure applied to a button, device containing gas, spring, or other device in the handle of the knife"). Therefore, the regulation is tailored to the state's objective. For these reasons, HRS § 134-53 survives intermediate scrutiny.

In *State v. Murillo*, 347 P.3d 284 (N.M. Ct. App. 2015), the New Mexico Court of Appeals upheld New Mexico's switchblade ban against a challenge under the Second Amendment and the equivalent provision of the state constitution. *Id.* at 292. The court applied intermediate scrutiny because the switchblade statute:

> Viewed from any approach, the switchblade statute is a modest infringement. Because Section 30–7–8 bans only a small subset of knives, which are themselves a peripheral subset of arms typically used for self-defense or security, the statute effects an unsubstantial burden on the right to keep and bear arms. Cf. Heller I, 554 U.S. at

> 629, 128 S.Ct. 2783 ("[T]he American people have considered the handgun to be the quintessential self-defense weapon.... [H]andguns are the most popular weapon chosen by Americans for self-defense in the home[.]"). And switchblades are designed for uses that are remote from the core of the right to keep and bear arms.

*Murillo* at 288.

The court further noted that Congress had passed a statute in 1958, the Federal Switchblade Act, 15 U.S.C. § 1241-1242 (2013), "still in effect," that banned importation of switchblades in order to address "[t]he problem of the use of switchblade and other quick-opening knives for criminal purposes[.]" *Id.*

In applying intermediate scrutiny, the court noted that the switchblade is "designed for quick use in a knife fight," and is "by design and use, almost exclusively the weapon of the thug and the delinquent." *Id.* at 289. The court held that the protection of the public from the surprise use of a dangerous weapon utilized in large part for unlawful activity is an important governmental purpose. *Id.* The court further held that prohibiting possession of this weapon is substantially related to that purpose. *Id.*

## IV. CONCLUSION

For the same reasons that New Mexico's switchblade statute survived intermediate scrutiny, Hawaii's butterfly knife statute should survive intermediate scrutiny.

Dated: Honolulu, Hawaii, January 15, 2020.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General of Hawaii

/s/ Ryan M. Akamine
CARON M. INAGAKI
RYAN M. AKAMINE
Deputy Attorneys General

Attorneys for Defendants
CLARE E. CONNORS and
AL CUMMINGS, in their official
capacities