PAMELA W. BUNN 6460
WENDY F. HANAKAHI 7963

DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, Hawai'i 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail: pam.bunn@dentons.com
       wendy.hanakahi@dentons.com

Attorneys for *Amicus Curiae*
EVERYTOWN FOR GUN SAFETY
SUPPORT FUND

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ANDREW TETER and JAMES GRELL,<br><br>            Plaintiffs,<br><br>v.<br><br>CLARE E. CONNORS, in her official capacity as the Attorney General of the State of Hawaii, and AL CUMMINGS, in his official capacity as the State Sheriff Division Administrator,<br><br>           Defendants. | Civil No. CV19-00183-ACK-WRP<br><br>**BRIEF OF EVERYTOWN FOR GUN SAFETY SUPPORT FUND AS AMICUS CURIAE**<br><br><br><br>Judge: Honorable Alan C. Kay<br>Trial: June 16, 2020, at 9:00 a.m. |

**BRIEF OF EVERYTOWN FOR GUN SAFETY
SUPPORT FUND AS AMICUS CURIAE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii
INTRODUCTION AND INTEREST OF AMICUS CURIAE ................................ 1
ARGUMENT ............................................................................................................ 3
    I.    Plaintiffs' Categorical "Common Use" Theory Is Inconsistent with Ninth Circuit Precedent, Illogical, and Dangerous. ................................... 3
    II.   Strict Scrutiny Is Not Appropriate Here. .................................................... 7
CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
   910 F.3d 106 (3d Cir. 2018) ............................................................................. 1

*Avitabile v. Beach*,
   368 F. Supp. 3d 404 (N.D.N.Y. 2018) ............................................................ 10

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ................................................................................. *passim*

*Friedman v. City of Highland Park*,
   784 F.3d 406 (7th Cir. 2015) ............................................................................. 7

*Fyock v. City of Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015) ..................................................................... *passim*

*Fyock v. City of Sunnyvale*,
   25 F. Supp. 3d 1267 (N.D. Cal. 2015),
   *aff'd*, 779 F.3d 991 (9th Cir. 2015) ............................................................... 5-6

*Heller v. District of Columbia*,
   670 F.3d 1244 (D.C. Cir. 2011) ..................................................................... 2-3

*Jackson v. City & County of S.F.*,
   746 F.3d 953 (9th Cir. 2014) ......................................................................... 7-9

*Kolbe v. Hogan*,
   813 F.3d 160 (4th Cir. 2016),
   *reh'g en banc granted*, 636 F. App'x 880 (Mar. 6, 2016),
   *decided en banc*, 849 F.3d 114 (4th Cir.) (en banc),
   *cert. denied*, 138 S. Ct. 469 (2017) ................................................................. 8

*Maloney v. Singas*,
   351 F. Supp. 3d 222 (E.D.N.Y. 2018) ............................................................ 10

*Mance v. Sessions*,
   896 F.3d 699 (5th Cir.),
   *petition for cert. filed*, No. 18-663 (U.S. Nov. 21, 2018) ............................... 8-9

*McDonald v. City of Chicago*,
　561 U.S. 742 (2010) ............................................................................................ 7

*Rehaif v. United States*,
　139 S. Ct. 2191 (2019) ........................................................................................ 2

*Rupp v. Becerra*,
　401 F. Supp. 3d 978 (C.D. Cal. 2019),
　*appeal docketed*, No. 19-56004 (9th Cir. Aug. 28, 2019) ............................... 1-2

*State v. DeCiccio*,
　105 A.3d 165 (Conn. 2014) ............................................................................... 10

*State v. Hermann*,
　873 N.W.2d 257 (Wis. Ct. App. 2015) ............................................................. 10

*State v. Murillo*,
　347 P.3d 284 (Wis. Ct. App. 2015) ............................................................. 4, 10

*Tyler v. Hillsdale Cty. Sheriff's Dep't*,
　775 F.3d 308 (6th Cir. 2014), *reh'g en banc granted* (Apr. 21, 2015),
　*decided en banc*, 837 F.3d 678 (6th Cir. 2016) (en banc) .................................. 8

*United States v. Singh*,
　924 F.3d 1030 (9th Cir. 2019) ............................................................................ 8

*Worman v. Healey*,
　922 F.3d 26 (1st Cir. 2019),
　*petition for cert. filed*, No. 19-404 (U.S. Sept. 23, 2019) ................................ 11

**Statutes**

Haw. Rev. Stat. § 134-51 ........................................................................................ 9

Haw. Rev. Stat. § 134-52 ........................................................................................ 9

Haw. Rev. Stat. § 134-53 ................................................................................ *passim*

**Other Authorities**

Appellants' Opening Brief, *Fyock v. City of Sunnyvale*, No. 14-15408,
　2014 WL 2175455 (9th Cir. May 16, 2014) .................................................. 5, 8

Joseph Blocher, *Bans*, 129 Yale L.J. 308 (2019), *at*
https://bit.ly/2NPXFaS ............................................................................... 6

William J. Krouse, *Gun Control Legislation*, Congressional Research
Service (Nov. 14, 2012), *at* http://bit.ly/1bNw2Br ............................................. 4-5

**INTRODUCTION AND INTEREST OF AMICUS CURIAE**

Amicus curiae Everytown for Gun Safety Support Fund ("Everytown") is the education, research, and litigation arm of Everytown for Gun Safety, the nation's largest gun-violence-prevention organization, with millions of supporters across all fifty states, including thousands in Hawai'i. Everytown for Gun Safety was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after the murder of twenty children and six adults in an elementary school in Newtown, Connecticut. Everytown's mission includes defending gun laws through the filing of amicus briefs that provide doctrinal analysis and historical context that might otherwise be overlooked. Everytown has drawn on its expertise to file briefs in numerous Second Amendment cases, including in a similar challenge to Hawai'i's stun-gun law currently pending before the Honorable Helen Gillmor in this District. *See Roberts v. Suzuki*, No. CV18-00125 HG-RT (D. Haw.); *see also, e.g., Duncan v. Becerra*, No. 19-55376 (9th Cir.); *Young v. Hawaii*, No. 12-17808 (9th Cir.); *Avitabile v. Cuomo*, No. 16-CV-1447 (N.D.N.Y.); *Wright v. District of Columbia*, No. 16-CV-1556 (D.D.C.).[1] Although

---

[1] Several courts have cited and relied on Everytown's amicus briefs in deciding such cases. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 112 n.8 (3d Cir. 2018); *Rupp v. Becerra*, 401 F. Supp. 3d 978, 991-92 & n.11

Everytown takes no position on butterfly knife legislation of the sort involved in this case, it has a strong interest in ensuring that Second Amendment jurisprudence is informed by a full understanding of relevant doctrine and history.

Everytown files this brief to make two doctrinal points in response to arguments advanced by Plaintiffs—arguments that, if accepted, could have profound effects on Second Amendment cases more broadly. *First*, Plaintiffs contend that the challenged law is "categorically unconstitutional" under *District of Columbia v. Heller*, 554 U.S. 570 (2008), because it prohibits a "form of knife," and, Plaintiffs assert, "[k]nives are 'in common use today' for the 'lawful purpose' of self-defense." Plaintiff's Memorandum in Support of Motion, ECF No. 33-1 ("Pls.' Mem.") at 3-4, 12. Plaintiffs further assert that butterfly knives in particular are "typically used lawfully as . . . 'self-defense weapon[s].'" *Id.* at 10. To Plaintiffs, it appears that this is all the Second Amendment analysis required here. *See id.* at 14. But no federal court has held that governments are categorically precluded from prohibiting any arm deemed in "common use," even those arms typically possessed for self-defense purposes. And, certainly, no federal court has held that any "form" of a commonly possessed category of weapon is somehow entitled to categorical constitutional protection. *See, e.g., Heller v. District of*

---

(C.D. Cal. 2019), *appeal docketed*, No. 19-56004 (9th Cir. Aug. 28, 2019); *see also Rehaif v. United States*. 139 S. Ct. 2191, 2210-11 & nn. 4, 7 (2019) (Alito, J., dissenting).

2

*Columbia*, 670 F.3d 1244, 1268 (D.C. Cir. 2011) ("We simply do not read *Heller* as foreclosing every ban on every possible sub-class of handguns or, for that matter, a ban on a sub-class of rifles."). That "[b]utterfly knives are legal to own in 47 states," Pls.' Mem. at 4, does nothing to change this analysis. In fact, the Seventh Circuit has expressly rejected a *less extreme* theory of common use as contrary to federalism, and the Ninth Circuit (among others) has implicitly done the same. *Second*, Plaintiffs ask for strict scrutiny should the Court reject his broad theory. *Id.* at 15. But, under controlling Ninth Circuit precedent, intermediate scrutiny is the correct standard.

## ARGUMENT

### I. Plaintiffs' Categorical "Common Use" Theory Is Inconsistent with Ninth Circuit Precedent, Illogical, and Dangerous.

Plaintiffs argue that Hawai'i's butterfly knife law, Hawai`i Revised Statutes ("HRS") § 134-53, is *necessarily* unconstitutional under the Second Amendment because "[k]nives are 'in common use today' for the 'lawful purpose' of self-defense" and butterfly knives are "a form of knife." Pls.' Mem. at 3-4; *see id.* at 12 (arguing that the law is "categorically unconstitutional"); *id.* at 13-14 (advocating a "categorical approach"). This is a novel approach. On Plaintiffs' theory, as soon as any broad category of weapon achieves a certain minimal nationwide "common use" threshold—notably, Plaintiffs do not assert that butterfly knives themselves are common, *see* Pls.' Mem. at 2 (stating only that butterfly knives "are common

3

arms of the Filipino people")—then the Second Amendment confers an absolute right to acquire any "form" of that weapon in every state.[2]

Plaintiffs locate this "common use" theory in *Heller*, which invalidated a law that "amount[ed] to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for [self-defense]." 554 U.S. at 628; *see* Pls.' Mem. at 14 ("Per *Heller*, this Court could strike down Hawaii's butterfly knife ban without the need to look to scrutiny analysis."). *Heller* held that "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to 'keep' and use for protection of one's home and family, would fail constitutional muster." 554 U.S. at 628–29 (quotations and citation omitted). Plaintiffs ask this Court to stretch this holding far beyond the context of that case—which concerned a law prohibiting a class of 114 million arms, *see* William J. Krouse, *Gun Control Legislation*, Congressional Research Service, at 8 (Nov. 14, 2012), *at*

---

[2] As noted, Plaintiffs also contend, based on assertions in a declaration submitted with their motion, that a butterfly knife in particular "is typically used lawfully as a 'self-defense weapon.'" Pls.' Mem. at 14. But it does not appear that the broad "common use" theory Plaintiffs propound here would require such a finding with respect to the specific type of weapon at issue in a case. *See id.* at 12 (rejecting the need to distinguish on this basis the New Mexico Court of Appeals's decision in *State v. Murillo*, 347 P.3d 284 (N.M. Ct. App. 2015), which upheld that state's switchblade prohibition). And, regardless, as explained below, *see infra* pp. 5-6, even if it did, Plaintiffs' categorical approach would still be incompatible with controlling Second Amendment authority.

4

US_Active\09500000\010040\114079105\V-5

http://bit.ly/1bNw2Br—to compel the invalidation of a law prohibiting a weapon, butterfly knives, that indisputably makes up only a tiny subset of knives both in Hawai'i and in the nation.[3]

That sweeping position is not consistent with the law of the Ninth Circuit. Several years ago, in a challenge to a local ordinance prohibiting a class of large-capacity ammunition magazines (those holding more than ten rounds), the Ninth Circuit rejected the argument that the law must be struck down as "categorically invalid" because it amounted to a "total ban" on "magazines overwhelmingly chosen by law-abiding citizens, that account for roughly forty-seven percent of all magazines." Appellants' Opening Brief, *Fyock v. City of Sunnyvale*, No. 14-15408, 2014 WL 2175455, at *24-25 (9th Cir. May 16, 2014). The Ninth Circuit accepted the district court's finding that such magazines were "in common use," evidence of which is absent here as to butterfly knives, noting that the plaintiff there had "presented sales statistics indicating that millions of magazines, some of which . . . were magazines fitting [the] definition of large-capacity magazines, have been sold over the last two decades in the United States." *Fyock v. City of Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015); *see Fyock v. City of Sunnyvale*, 25

---

[3] Plaintiffs certainly do not argue that butterfly knives are widely owned or possessed. *Cf.* Pls.' Mem. at 4 (asserting more generally that "*knives* are widely owned in every state in the Union" (emphasis added)). The record, in fact, contains no evidence at all as to the number of butterfly knives possessed by law-abiding citizens.

5

F. Supp. 3d 1267, 1275 (N.D. Cal. 2014) ("Nevertheless, 'it is safe to say that whatever the actual number of such magazines in United States' consumers' hands, it is in the tens-of-millions, even under the most conservative estimates.'"). But, even so, the Court rejected a categorical approach and applied intermediate scrutiny in "affirm[ing] the district court's denial of [the plaintiff's] motion for a preliminary injunction" of the large-capacity magazine prohibition. *Fyock*, 779 F.3d at 999-1001.

As one scholar has recently put it, "rules of per se invalidity should be reserved for those cases in which regulations deny essential or near-essential means of achieving the interests guaranteed by the right." Joseph Blocher, *Bans*, 129 Yale L.J. 308, 356 (2019). "In the Second Amendment context," that means that unless "a law denies people the ability to effectuate the 'core' interest of self-defense with arms," it "should not be subject to per se invalidity." *Id.* Rather, where "alternative means of armed self-defense are available," the application of "means-end scrutiny"—and, in particular, intermediate scrutiny—is appropriate. *Id.* That is precisely the situation here. *See infra* p. 9-10 (noting the many adequate alternatives to butterfly knives available under Hawai'i law).

Finally, while Plaintiffs assert that "[b]utterfly knives are legal to own in 47 states," Pls.' Mem. at 4, that does nothing to change the result in this case. As the Seventh Circuit has explained, legislators' decisions in some parts of the country

cannot make laws in other parts any "more or less open to challenge under the Second Amendment." *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015). If they did, that "would imply that no jurisdiction other than the United States as a whole can regulate firearms. But that's not what *Heller* concluded." *Id.* at 412. Because our Constitution "establishes a federal republic where local differences are cherished as elements of liberty," federalism is "no less part of the Constitution than is the Second Amendment." *Id.* The Supreme Court's decision in *Heller* (as applied to the states in *McDonald v. City of Chicago*, 561 U.S. 742 (2010)) "does not foreclose all possibility of experimentation" by state and local governments, *Friedman*, 784 F.3d at 412, but rather permits them to do what they have long done in the realm of firearm legislation: "experiment with solutions to admittedly serious problems," *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 970 (9th Cir. 2014); *see also McDonald*, 561 U.S. at 784 (noting that "[s]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment"). Plaintiffs' approach would eviscerate their ability to do so. That is not the law.

## II. Strict Scrutiny Is Not Appropriate Here.

Plaintiffs' second argument is no less novel: they want this Court to apply strict scrutiny in assessing whether the challenged law is constitutional.

Controlling Ninth Circuit precedent, however, forecloses that approach and instead compels the application of intermediate scrutiny.

The analysis here is not complicated. The Ninth Circuit has consistently applied intermediate scrutiny to laws that were found or assumed to burden protected Second Amendment conduct. *See, e.g., Fyock*, 779 F.3d at 999 (large-capacity magazine prohibition); *United States v. Singh*, 924 F.3d 1030, 1057 (9th Cir. 2019) (prohibition on gun possession by nonimmigrant visa holders); *Jackson*, 746 F.3d at 965, 968 (handgun safe-storage regulation and hollow-point ammunition prohibition). And, on the other side of the ledger, it has never assessed a Second Amendment challenge under strict scrutiny—even in cases, like this one, where plaintiffs argued the law imposed a "total ban" on a type of weapon. *See* Appellants' Opening Br., *Fyock*, 2014 WL 2175455, at *19-33.[4]

---

[4] Indeed, even outside the Ninth Circuit, in the eleven-plus years since *Heller*, only two circuit decisions have held that strict scrutiny governed a Second Amendment challenge, and both of those cases were promptly vacated and taken en banc, where intermediate scrutiny was then applied. *See Kolbe v. Hogan*, 813 F.3d 160, 182 (4th Cir. 2016) (facial challenge to state assault-weapon prohibition), *reh'g en banc granted*, 636 F. App'x 880 (Mar. 6, 2016), *decided en banc*, 849 F.3d 114, 130 (4th Cir. 2017) (en banc) (the law "is subject to—and readily survives—the intermediate scrutiny standard of review"); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 775 F.3d 308, 328-29 (6th Cir. 2014) (as-applied challenge to federal law prohibiting plaintiff from possessing any firearm for life), *reh'g en banc granted* (Apr. 21, 2015), *decided en banc*, 837 F.3d 678, 692 (6th Cir. 2016) (en banc) ("conclud[ing] that intermediate scrutiny is the appropriate standard"). (In *Mance v. Sessions*, the Fifth Circuit "assume[d]. without deciding, that the strict, rather than intermediate, standard of scrutiny [wa]s applicable," and upheld the challenged federal laws, restricting the interstate transfer of handguns, under a

8

As the Ninth Circuit explained in *Fyock*, the large-capacity magazine prohibition at issue there "le[ft] open alternative channels for self-defense." *Id.* at 999 (quoting *Jackson*, 746 F.3d at 961) (internal quotation marks omitted). It did not restrict "the possession of magazines in general" or "the number of magazines that an individual may possess." *Id.* Nor did it "affect the ability of law-abiding citizens to possess the 'quintessential self-defense weapon'—the handgun." *Id.* "Rather, [the challenged law] restrict[ed] possession of only a subset of magazines that at over a certain capacity." *Id.* Under these circumstances, the Ninth Circuit held, the district court properly applied intermediate scrutiny.

So too in this case, where, as Defendants note, "HRS § 134-53 does not interfere with the use of other types of knives, or any other instruments, for self-defense." Defendants' Memorandum in Support of Motion, ECF No. 36-1 ("Defs.' Mem.") at 12. "Only butterfly knives, specifically defined as 'a knife having a blade encased in a split handle that manually unfolds with a hand or wrist action with the assistance of inertia, gravity, or both,' are prohibited" by § 134-53. *Id.*[5]

---

strict-scrutiny analysis. 896 F.3d 699, 704 (5th Cir. 2018), *petition for cert. filed*, No. 18-663 (U.S. Nov. 21, 2018).)

[5] Switchblades are separately prohibited under another section of Hawai'i law. Haw. Rev. Stat. § 134-52. And dirks and daggers, among other deadly weapons, may not be carried concealed or within any vehicle in the state. *Id.* § 134-51. But Hawai'i residents unquestionably have lawful access to a wide variety of knives and other weapons for self-defense. *See* Pls.' Mem. at 12-14.

9

US_Active\09500000\010040\114079105\V-5

Intermediate scrutiny is thus plainly appropriate. Pls.' Mem. at 12-14; *see, e.g.*, *Murillo*, 347 P.3d at 288 (applying intermediate scrutiny, and upholding Nevada's switchblade law, because it "bans only a small subset of knives, which are themselves a peripheral subset of arms typically used for self-defense or security").

Indeed, even cases *favorable* to Plaintiffs have applied intermediate scrutiny to similar prohibitions. *See State v. DeCiccio*, 105 A.3d 165, 204–06 (Conn. 2014) (holding that intermediate scrutiny is the correct standard to apply to prohibition on dirk knives and police batons, in light of the availability of many "other options for possessing protected weapons in the home," and noting that "courts throughout the country have nearly universally applied some form of intermediate scrutiny" in Second Amendment cases); *State v. Hermann*, 873 N.W.2d 257, 260 (Wis. Ct. App. 2015) (applying intermediate scrutiny in as-applied challenge to switchblade prohibition); *Avitabile v. Beach*, 368 F. Supp. 3d 404, 407, 418 (N.D.N.Y. 2018) (applying intermediate scrutiny in Second Amendment challenge to "New York's total ban on the civilian possession of tasers and stun guns," where plaintiff "has not established that these arms are as popularly owned and used for self-defense as the handgun"); *Maloney v. Singas*, 351 F. Supp. 3d 222, 227, 239 (E.D.N.Y. 2018) (applying intermediate scrutiny in similar challenge to New York's "complete ban on the possession of nunchaku by private citizens"). There is no reason for this Court to take a different approach here.

US_Active\09500000\010040\114079105\V-5

As Plaintiffs note, a few state courts have applied a more categorical approach in striking down prohibitions on certain knives, though not butterfly knives, and on tasers and stun guns. *See* Pls.' Mem. at 13-14. But these decisions are against the weight of authority, and against all federal case law, which has applied intermediate scrutiny to such challenges. And, as explained, adopting such a categorical analysis here would be directly contrary to Ninth Circuit precedent—most notably the decision in *Fyock* applying intermediate scrutiny in assessing a Second Amendment challenge to a large-capacity magazine prohibition. *See supra* pp. 5-6, 9-10; *see also Worman v. Healey*, 922 F.3d 26, 38 n.6 (1st Cir. 2019) (rejecting the Illinois Supreme Court's holding that a state law prohibiting the carrying of stun guns and tasers was a "categorical ban" and also disagreeing with that court's "conclusion that any law that restricts a certain type of arms is per se unconstitutional"), *petition for cert. filed*, No. 19-404 (U.S. Sept. 23, 2019).

## CONCLUSION

Everytown respectfully submits that the Court should reject Plaintiff's request to "apply a categorical approach" to Hawai'i's law, and, if it determines the Second Amendment right is implicated here, should apply intermediate scrutiny.

11

DATED: Honolulu, Hawaiʻi, January 23, 2020.

/s/ Wendy F. Hanakahi
PAMELA W. BUNN
WENDY F. HANAKAHI

Attorneys for Amicus Curiae
EVERYTOWN FOR GUN SAFETY
SUPPORT FUND