CLARE E. CONNORS          7936
Attorney General of Hawaii

CARON M. INAGAKI          3835
RYAN M. AKAMINE           4358
Deputy Attorneys General
Department of the Attorney
  General, State of Hawaii
425 Queen Street
Honolulu, Hawaii 96813
Telephone: (808) 586-1494
e-mail:  Caron.M.Inagaki@hawaii.gov
         Ryan.M.Akamine@hawaii.gov

Attorneys for Defendants
CLARE E. CONNORS and
AL CUMMINGS, in their official capacities

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW TETER and<br>JAMES GRELL,<br><br>        Plaintiffs,<br><br>v.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii, and AL CUMMINGS, in his Official Capacity as the State Sheriff Division Administrator,<br><br>        Defendants. | Civil No. CV19-00183-ACK-WRP<br><br>DEFENDANTS CLARE E. CONNORS AND AL CUMMINGS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF No. 33]; CERTIFICATE OF SERVICE<br><br>Judge: Honorable Alan C. Kay<br>Trial: June 16, 2020 at 9:00 AM<br>Hearing: April 28, 2020 at 11:00 AM |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................. i-iii

I.    INTRODUCTION.................................................... 1

II.   FACTS............................................................. 1

      A.    The Law and Legislative History..................... 1

      B.    Butterfly Knife Origin and Brandishing ........... 4

III.  STANDARD OF REVIEW

IV.   ARGUMENT

      A.    Butterfly Knives are not Protected
            by the Second Amendment ............................ 6

      B.    If Butterfly Knives fall within
            the Second Amendment, Intermediate Scrutiny
            applies and HRS 134-53 is constitutional ..... 12

IV.   CONCLUSION ...................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                             **Page**

*Carson v. State,*
247 S.E.2d 68, 73 (Ga. 1978) ....................................................................... 12

*Crowley Cutlery Co. v. United States,*
849 F.2d 273, 278 (7th Cir. 1988) .................................................................. 9

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ....................................................................7, 8, 12, 15

*English v. State,*
35 Tex. 473 (1871) ....................................................................................... 8

*In Interest of Doe,*
73 Haw. 89, 828 P.2d 272 (1992) ..........................................................2, 11

*Jackson v. City & County of San Francisco,*
746 F.3d 953 (9th Cir. 2014) ..........................................................13, 14, 15

*Lacy v. State,*
903 N.E.2d 486, 490 (Ind. Ct. App. 2009) ........................................8, 12, 16

*Republic of Hawaii v. Clark,*
10 Haw. 585, 587-88 (1897) ....................................................................... 12

*State v. LaChapelle,*
451 N.W.2d 689, 691 (Neb. 1990) ............................................................... 13

*State v. Murillo,*
347 P.3d 284 (N.M. Ct. App. 2015)........................................................15, 16

*United States v. Chovan,*
735 F.3d 1127 (9th Cir. 2013)...................................................................... 14

*United States v. Henry,*
688 F.3d 637 (9th Cir. 2012)....................................................................7, 12

*United States v. McCartney,*
357 F. App'x 73, 76 (9th Cir. 2009) ................................................................ 8

*United States v. Nelsen,*
859 F.2d 1318 (8th Cir. 1988) ........................................................................ 9

<u>Federal Statutes</u>

*Federal Anti-Switchblade Act*, 15 U.S.C. §§ 1241-1245 ............................... 8

*Federal Switchblade Act*, 15 U.S.C. § 1241-1242 (2013) ................ ..........16

<u>State Statutes</u>

H.R.S. § 134-52 .............................................................................................11

H.R.S. § 134-53 ............................................ 1, 2, 11, 12, 13, 14, 15, 16, 17, 18

CA Penal Section 17235 ................................................................................. 9

<u>Other Authorities</u>

Second Amendment ............................................. 1, 6, 7, 13, 14, 15

S. Rep. 85-1980, 85th Cong. 2d. Sess. (1958), 1958 U.S.C.C.A.N. 3435 ...... 9

S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal 1558 ........ 2, 10, 11

1999 Haw. Sess. Laws Act 285, § 1 ............................................................... 11

1852 Haw. Sess. Laws Act of May 25, 1852, § 1 ......................................... 12

*Knives Deal*, https://www.knivesdeal.com/the-balisong-knife-here-
is-everything-you-need-to-know (last visited January 14, 2020) ................. 4

*Blade Magazine*, https://blademag.com/knife-history/history-the-disputed
-origins-of-the-butterfly-knife (last visited January 14, 2020). ..................... 4

*Wikipedia*, https://en.wikipedia.org/wiki/Butterfly_knife
(last visited January 14, 2020). ....................................................................4

*The Art of the Butterfly Knife*,
http://www.butterflyknifebutterflyknife.com/Butterfly_Knife_Legal_Status.html
(last visited January 14, 2020) ....................................................................5

*Fast opening of BALISONG aka BUTTERFLY KNIFE*, YouTube (Dec 28, 2015),
https://www.youtube.com/watch?v=Q-xd-kZHttU ......................................5

*BUTTERFLY KNIFE WORLDS MOST RELIABLE AND FASTEST WAY TO OPEN
A BALISONG*, YouTube (Sep 5, 2016),
https://www.youtube.com/watch?v=2Wdp75DoaQM...................................5

*Very Fast Open balisong. Butterfly knife flipping tutorial*, YouTube (Jun 12, 2019),
https://www.youtube.com/watch?v=-Imz9XMX56A ....................................5

*Balisong Fast Opening For Fighting*, YouTube (Oct 30, 2017),
https://www.youtube.com/watch?v=gKMyWxjXOAY..................................5

*Balisong Instructional - Fast Draw*, YouTube (Feb 11, 2008), https://www.
youtube.com/watch?v=fNqXVlSQPfs .........................................................5

*Really Fast Butterfly Knife Opening!*, YouTube (Mar 3, 2017),
https://www.youtube.com/watch?v=-6X1eV_4bQU.....................................5

eCourt Kokua, Judiciary Information Management System, State of Hawaii,
https://jimspss1.courts.state.hi.us/JIMSExternal/Subscriptions/CaseSearch.iface;
Case ID: 1DCW-19-0002947 - State v. Jhovany Corpuz, "Judicial Determination
of Probable Cause" filed on September 16, 2019.. .........................................6

eCourt Kokua, Judiciary Information Management System, State of Hawaii,
https://jimspss1.courts.state.hi.us/JIMSExternal/Subscriptions/CaseSearch.iface;
Case ID: 1CPC-19-0001344 - State v. Jhovany Corpuz in the Circuit Court of the
First Circuit, State of Hawaii, "Indictment" filed on September 17, 2019 ....6

DEFENDANTS CLARE E. CONNORS AND AL CUMMINGS'
MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF No. 33]

## I. INTRODUCTION

Defendants oppose Plaintiffs' motion for a summary judgment ruling that

HRS § 134-53 is unconstitutional and violates the Second Amendment. It is the

Defendants' position that HRS § 134-53 is constitutional and does not violate the

Second Amendment. Defendants filed their own summary judgment motion,

memorandum in support and concise statement of material facts in support of

motion, and hereby incorporate the arguments and exhibits in that motion by

specific reference. *See* ECF No. 36, ECF No. 36-1, ECF No. 37, and ECF No. 37-1

– 37-10. It is Defendants' position that their Motion for Summary Judgment should

be granted and that Plaintiffs' motion should be denied.

## II. FACTS

### A. The Law and Legislative History.

Butterfly knives have been banned in Hawaii since 1999. *See* HRS § 134-53,

attached as Exhibit A. Under the law, it is a crime to manufacture, sell, transfer,

possess, or transport any butterfly knife, or to knowingly possess or intentionally

use or threaten to use a butterfly knife while engaged in the commission of a crime.

The law specifically describes the characteristics of the banned knife as "a knife

having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both." *Id.*

Plaintiffs claim that but for the law, they would "acquire, possess, carry and where appropriate use a butterfly knife to protect himself, his home, his family and business." *See* ECF 1, Paragraphs 94 and 102. Neither Plaintiff alleges that they have been charged with a crime under HRS § 134-53. Their only claim is therefore a facial challenge to the constitutional validity of HRS § 134-53.

In 1999, the Hawaii State Legislature passed HRS § 134-53 in response to the Hawaii Supreme Court case of *In Interest of Doe*, 73 Haw. 89, 828 P.2d 272 (1992). A copy of the case is attached as Exhibit B. In *Doe*, the Minor Doe was adjudicated as a law violator in possession of a butterfly knife, in violation of the ban on switchblade knives. The court found that the butterfly knife did not fall within the definition of a "switchblade knife" and was therefore not banned under HRS § 134–52. *See* HRS § 134–52, attached as Exhibit C. Because of *Doe*, the Legislature sought to clarify the law and specifically prohibit butterfly knives by enacting HRS § 134-53. The Legislature's Senate Committee on Judiciary noted in its Standing Committee Report No. 1389, in 1999 Senate Journal, at 1558-59 ("S. Stand. Comm. Rep. No. 1389"):

> Your Committee finds that certain types of knives,
> particularly switchblade and butterfly knives, are

associated with gang activity. Your Committee believes that butterfly knives (also known as balisongs or gravity knives) appear to be covered within the statutory definition of switchblade knives. However, your Committee further finds that although switchblade knives are presently illegal, stores openly sell, and minors can readily purchase, butterfly knives.

Your Committee is aware, however, that the Hawaii Supreme Court, in In the Interest of John Doe, (FC-J No. 91-55223), has held that a butterfly knife does not have a blade that opens automatically by operation of inertia, gravity, or both, and thus is not a switchblade knife under section 134-52, Hawaii Revised Statutes. The court reasoned that the legislative history of section 134-52 did not expressly indicate whether the legislature intended to include butterfly knives under this statute. Therefore, it is your Committee's intent to clarify that butterfly knives should be treated in the same manner as switchblade knives.

Testimony in support of this measure was submitted by the Department of the Prosecuting Attorney of the City and County of Honolulu, the Honolulu Police Department, and a private citizen. Testimony in opposition to this measure was submitted by the Office of the Public Defender and the Pedoy School of Escrima.

*See* Exhibit D, attached.

The Legislature received testimony that favored and opposed the new proposed law. In testimony in favor of the law, the Honolulu Police Department pointed out: "Our Gang Detail has noticed an increasing trend in minors and gang members armed with knives and daggers. Butterfly knives are preferred as they are easy to conceal and are more intimidating when brandished." *See* Letter dated

March 16, 1999, to The Honorable Avery B. Chumbley, Co-Chair, The Honorable

Matthew M. Matsunaga, Co-Chair and Members Committee on Judiciary, The

Senate, from George McKeague, Captain, Criminal Investigation Division,

Honolulu Police Department. *See* Exhibit E, Legislative History at SOH 00025,

attached.

B.  Butterfly Knife Origin and Brandishing.

The origin of the butterfly knife or balisong is debatable. It could have

originated in the Phillipines, as Plaintiffs claim. *See* ECF No. 1, Paragraph 79, and

ECF No. 33-1, PageID #158. Or in France. *See Knives Deal*, https://www.

knivesdeal.com/the-balisong-knife-here-is-everything-you-need-to-know (last

visited January 15, 2020). *See* attached Exhibit F. In any event, it appears the

origin is debatable. *See also Blade Magazine*, https://blademag.com/knife_-

history/history-the-disputed-origins-of-the-butterfly-knife (last visited January 15,

2020). *See* attached Exhibit G.

Is also appears that the butterfly knife has been outlawed in the Philippines

for reasons similar to Hawaii. "In the Philippines, it is generally illegal to carry one

without identification or a proper permit in the streets of the capital because of

their **prevalent use in crimes and altercations**." (emphasis added) *Wikipedia*,

https://en.wikipedia.org/wiki/Butterfly_knife (last visited January 14, 2020). *See*

attached Exhibit H. *See also The Art of the Butterfly Knife*,

http://www.butterflyknifebutterflyknife.com/Butterfly_Knife_Legal_Status.

html (last visited January 15, 2020) ("Because of their prevalent use in altercations

and crimes, it is illegal to carry a Butterfly knife without identification or a proper

permit in the capital streets of Manila."). *See* attached Exhibit I.

A butterfly knife can be opened and ready for use very quickly. *See Fast*

*opening of BALISONG aka BUTTERFLY KNIFE*, YouTube (Dec 28, 2015),

https://www.youtube.com/watch?v=Q-xd-kZHttU; *BUTTERFLY KNIFE WORLDS*

*MOST RELIABLE AND FASTEST WAY TO OPEN A BALISONG*, YouTube (Sep

5, 2016), https://www.youtube.com/watch?v=2Wdp75DoaQM; *Very Fast Open*

*balisong. Butterfly knife flipping tutorial*, YouTube (Jun 12, 2019), https://www.

youtube.com/watch?v=-Imz9XMX56A; *Balisong Fast Opening For Fighting*,

YouTube (Oct 30, 2017), https://www.youtube.com/watch?v=gKMyWxjXOAY;

*Balisong Instructional - Fast Draw*, YouTube (Feb 11, 2008), https://www.

youtube.com/watch?v=fNqXVlSQPfs; *Really Fast Butterfly Knife Opening!*,

YouTube (Mar 3, 2017), https://www.youtube.com/watch?v=-6X1eV_4bQU.

"Undoubtedly, then, these knives are potentially dangerous, lethal weapons."

*Taylor v. McManus*, 661 F.Supp. 11, 13 (E.D. Tenn. 1986). Indeed, on Thursday,

September 12, 2019 in Waipahu, Hawaii, Devy Gaoiran was stabbed in the chest,

allegedly with a butterfly knife by Jhovany Corpuz after being disrespected. *See* https://www.khon2.com/local-news/police-investigating-fatal-stabbing-in-waipahu/ (last visited April 6, 2020); https://www.khon2.com/news/family-of-man-killed-in-waipahu-stabbing-wants-justice/ (last visited April 6, 2020). Mr. Gaoiran would die, and Mr. Corpuz would be arrested and indicted for murder. *See* eCourt Kokua, Judiciary Information Management System, State of Hawaii, https://jimspss1.courts.state.hi.us/JIMSExternal/Subscriptions/CaseSearch.iface; Case ID: 1DCW-19-0002947 - State v. Jhovany Corpuz, "Judicial Determination of Probable Cause" filed on September 16, 2019; Case ID: 1CPC-19-0001344 - State v. Jhovany Corpuz in the Circuit Court of the First Circuit, State of Hawaii, "Indictment" filed on September 17, 2019.

III.   STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

IV.   ARGUMENTS

A.   Butterfly Knives are not Protected by the Second Amendment.

Dangerous and unusual weapons like butterfly knives are not protected by the Second Amendment, because they are used for offensive purposes.

The first step in the analysis turns on whether butterfly knives fall within the "dangerous and unusual weapons" exception. *District of Columbia v. Heller*, 554 U.S. 570 (2008), expressly stated that "the right [secured by the Second Amendment] [is] **not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.**" *Id.* at 626 (emphasis added). *Heller* recognized the "important limitation on the right to keep and carry arms" that "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627. "[T]he Second Amendment right . . . extends only to certain types of weapons." *Id.* at 623. "[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. If a weapon falls within the exception, then it is not protected by the Second Amendment and the analysis ends. If it does not fall within the exception, then the analysis proceeds to the second step. A weapon falls within the dangerous and unusual weapons exception if it is "dangerous and unusual" and if it is not "typically possessed by law-abiding citizens for lawful purposes." *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012).

The Ninth Circuit has applied this exception to machine guns, silencers, grenades, and directional mines, on the ground that these weapons are not

"typically possessed by law-abiding citizens for lawful purposes." *Id.* at 640;

*United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009). Furthermore,

*English v. State*, 35 Tex. 473 (1871), a case that was expressly cited by the

Supreme Court in *Heller*, 554 U.S. at 627, in support of the dangerous and unusual

weapons exception, upheld a statute banning ". . . dirks, daggers, slungshots,

swordcanes, spears, brass-knuckles and bowie knives." *English*, 35 Tex. at 474.

 Butterfly knives are a subset of knives, just as switchblades are.

Switchblades have also been held not to be typically possessed by law-abiding

citizens for lawful purposes. In *Lacy v. State*, 903 N.E.2d 486, 490 (Ind. Ct. App.

2009), the Indiana Court of Appeals upheld the constitutionality of Indiana's ban

on switchblades. The *Lacy* court concluded that "we cannot say that switchblades

are typically possessed by law-abiding citizens for self defense purposes." *Id.* at

492. The court cited the "Federal Anti-Switchblade Act" (aka the Federal

Switchblade Act), which has long made importation of switchblades illegal under

federal law. *Id.* (citing 15 U.S.C. §§ 1241-1245). The *Lacy* court also cited the

legislative history of the federal act, which provided that the "problem of the use of

switchblades and other quick opening knives for criminal purposes has become

acute during recent years – particularly by juvenile delinquents in large urban

areas," and that "police chiefs, almost without exception, indicate that these

vicious weapons are on many occasions the instruments used by juveniles in the commission of robberies and assaults." *Id.* (quoting S. Rep. 85-1980, 85th Cong. 2d. Sess. (1958), 1958 U.S.C.C.A.N. 3435, 3436-3437). See also CA Penal Section 17235, which defines a "switchblade knife" to include a "…knife, the blade or blades of which are two or more inches in length and which can be released automatically by a………flip of the wrist…".

The Seventh Circuit, in *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir. 1988), held that "[s]witchblade knives are more dangerous than regular knives because they are more readily concealable and hence more suitable for criminal use." The Eighth Circuit noted in *United States v. Nelsen*, 859 F.2d 1318 (8th Cir. 1988):

> Congress stated its reasons for adopting the [Switchblade Knife Act] quite plainly. Switchblade knives were increasingly being used for criminal purposes, especially by young gang members. Some states had tried to regulate or ban the knives, but easy access to knives from other states through the mail order business continually frustrated such efforts. Congress decided to stop this interstate flow totally by using the commerce power. *See* S.Rep. No. 1980, 1958 U.S.Code Cong. & Admin.News at 3436–37.

*Nelsen*, 859 F.2d at 1320.

Butterfly knives are highly analogous to switchblades in that both are concealable, both are dangerous, and both are unusual. *See Taylor v. McManus*,

661 F. Supp. 11, 13 (E.D. Tenn. 1986) ("While the exotic knife has some utilitarian use, it is most often associated with the martial arts and with combat. See, Donald S. Bitanga, The Butterfly Manual, "Foreward", p. 6. Light and maneuverable, the Balisong can be opened very rapidly, perhaps in less than five seconds, by a skilled practitioner using the techniques taught in Bitanga's manual. (footnote omitted) Undoubtedly, then, these knives are potentially dangerous, lethal weapons.") The blade for both types of knives fits into the handle and therefore these knives are able to be hidden in clothing. Both types of knives can be deployed quickly. Strictly speaking, a switchblade generally uses a spring mechanism to open the blade, while a butterfly knife uses gravity or inertia to flip the blade open.[1] The Hawaii legislature found that both types of knives are popular with criminals and gang members because of these features. *See* S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558-59 (switchblades and butterfly knives are associated with gang activity). Therefore, butterfly knives, like switchblades, are "unusual" in that they are not "typically possessed by law-abiding citizens for lawful purposes".

---

[1] Some jurisdictions, however, more broadly define switchblades to include mechanisms that rely on gravity or inertia to open the blade as well. *See infra* footnote 2.

The legislative history of HRS § 134-53 supports treating butterfly knives analogously to switchblades. As stated above, the Hawaii Supreme Court in *In Interest of Doe*, 73 Haw. 89, 828 P.2d 272 (1992), held that butterfly knives do not fall within the statutory definition of switchblades in HRS § 134-52. In response, the Hawaii legislature enacted a new and separate section, HRS § 134-53, specifically prohibiting possession of butterfly knives. 1999 Haw. Sess. Laws Act 285, § 1. The Senate Judiciary Committee noted: "Your Committee finds that certain types of knives, particularly switchblades and butterfly knives, are associated with gang activity. . . . However, your Committee further finds that although switchblade knives are presently illegal, stores openly sell, and minors can readily purchase, butterfly knives. . . . Therefore, it is your Committee's intent to clarify that *butterfly knives should be treated in the same manner as switchblade knives*." S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558-59 (emphasis added).[2]

---

[2] The relationship between butterfly knives and switchblades is even closer in some jurisdictions. The Sixth Circuit interpreted the definition of switchblades in the federal Switchblade Knife Act as encompassing butterfly knives. *Taylor v. United States*, 848 F.2d 715, 720, (6th Cir. 1988). California and New Mexico have also applied their laws regulating switchblades to butterfly knives. *People ex rel. Mautner v. Quattrone*, 260 Cal. Rptr. 44, 45-48 (Cal. Ct. App. 1989) and CA Penal Section 17325; *State v. Riddall*, 811 P.2d 576, 577-80 (N.M. Ct. App. 1991).

It should also be noted that Hawaii has long regulated possession of "deadly weapons." In 1852, the Kingdom of Hawaii enacted a statute making it a criminal offense for "[a]ny person not authorized by law" to "carry, or be found armed with, any bowie-knife, sword-cane, pistol, air-gun, slung-shot or other deadly weapon[.]" 1852 Haw. Sess. Laws Act of May 25, 1852, § 1 at 19; *see also Republic of Hawaii v. Clark*, 10 Haw. 585, 587-88 (1897). Therefore, the regulation of dangerous weapons, including bladed weapons that are concealable (e.g., sword-canes and bowie-knives), is a longstanding prohibition in Hawaii. *See Heller*, 554 U.S. at 626 ("longstanding prohibitions" not affected by *Heller*).

Butterfly knives and switchblades are also clearly "dangerous" in that people can be severely injured or killed by them. "An object is 'dangerous' when it is 'likely to cause serious bodily harm.'" *Henry*, 688 F.3d at 640 (quoting *Black's Law Dictionary* 451 (9th ed.2009)). And the fact that butterfly knives and switchblades are concealable means that they are more dangerous than ordinary knives, much like the way sawed-off shotguns are more dangerous than ordinary firearms. *See Heller*, 554 U.S. at 625 (short-barreled shotguns as dangerous and unusual weapons); *Lacy*, 903 N.E.2d at 492 n.3 (finding that ban on sawed-off shotguns is analogous to ban on switchblades); *Carson v. State*, 247 S.E.2d 68, 73 (Ga. 1978) (sawed-off shotgun statute upheld because they are "of a size such as

can easily be concealed and which are adapted to and commonly used for criminal purposes"); *State v. LaChapelle*, 451 N.W.2d 689, 691 (Neb. 1990) (upholding ban on machine guns, short rifles, and short shotguns because they are "readily concealed" and used for "a criminal purpose").

Consequently, the reasons supporting the ban on butterfly knives are the same as those supporting the ban on switchblades. Both are more dangerous than ordinary knives and are not "typically possessed by law-abiding citizens for lawful purposes." This was in fact the testimony cited above from Police Captain McKeague about butterfly knives. Based on the testimonies received, the Hawaii legislature essentially found that butterfly knives are dangerous and unusual weapons. As such, they do not fall within the scope of the Second Amendment.

B.    <u>If Butterfly Knives fall within the Second Amendment, Intermediate Scrutiny applies and HRS 134-53 is constitutional.</u>

There are no Ninth Circuit butterfly knife cases directly on point. But even assuming for the sake of argument that knives could be considered "arms" under the Second Amendment, butterfly knives would not be constitutionally protected.

For Second Amendment cases, the Ninth Circuit follows a two-step analysis. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014). "The two-step inquiry . . . '(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an

appropriate level of scrutiny.'" *Id.* In the first step, the question is "whether the challenged law burdens conduct protected by the Second Amendment based on a 'historical understanding of the scope of the Second Amendment right,' or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'" *Id.* (citations and brackets omitted). "If a prohibition falls within the historical scope of the Second Amendment, [the court] must then proceed to the second step of the Second Amendment inquiry to determine the appropriate level of scrutiny." *Id.*

When ascertaining the appropriate level of scrutiny, the court considers: "(1) 'how close the law comes to the core of the Second Amendment right' and (2) 'the severity of the law's burden on the right.' *Id.* at 960-61. If a challenged law does not implicate a core Second Amendment right or does not place a substantial burden on the Second Amendment right, then intermediate scrutiny may be applied. *Id.* at 961. Intermediate scrutiny "requires (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013).

HRS § 134-53 does not implicate a core Second Amendment right because the core of the Second Amendment is self-defense within the home. *Jackson*, 746

F.3d at 963-64. Clearly, butterfly knives are not a "quintessential self-defense weapon" for defense in the home, like handguns. *See Heller*, 554 U.S. at 629. And Plaintiffs' requested application of strict scrutiny does not apply in this case. In fact, butterfly knifes are often used for offensive stabbing. *See* videos referenced above, showing that butterfly knives can be opened and ready for use very quickly. Furthermore, "regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Jackson*, 746 F.3d at 961. Here, HRS § 134-53 does not interfere with the use of other types of knives, or any other instruments, for self-defense. Only butterfly knives specifically defined as "a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity, or both," are prohibited. Therefore, intermediate scrutiny should be applied.

In *State v. Murillo*, 347 P.3d 284 (N.M. Ct. App. 2015), the New Mexico Court of Appeals upheld New Mexico's switchblade ban against a challenge under the Second Amendment and the equivalent provision of the state constitution. *Id.* at 292. The court applied intermediate scrutiny because the switchblade statute:

> Viewed from any approach, the switchblade statute is a modest infringement. Because Section 30–7–8 bans only a small subset of knives, which are themselves a peripheral subset of arms typically used for self-defense

or security, the statute effects an unsubstantial burden on
the right to keep and bear arms. Cf. Heller I, 554 U.S. at
629, 128 S.Ct. 2783 ("[T]he American people have
considered the handgun to be the quintessential self-
defense weapon.... [H]andguns are the most popular
weapon chosen by Americans for self-defense in the
home[.]"). And switchblades are designed for uses that
are remote from the core of the right to keep and bear
arms.

*Murillo* at 288. The court further noted that Congress had passed a statute in 1958,

the Federal Switchblade Act, 15 U.S.C. § 1241-1242 (2013), "still in effect," that

banned importation of switchblades in order to address "[t]he problem of the use of

switchblade and other quick-opening knives for criminal purposes[.]" *Id.*

In applying intermediate scrutiny, the court noted that the switchblade is

"designed for quick use in a knife fight," and is "by design and use, almost

exclusively the weapon of the thug and the delinquent." *Id.* at 289. The court held

that the protection of the public from the surprise use of a dangerous weapon

utilized in large part for unlawful activity is an important governmental purpose.

*Id.* The court further held that prohibiting possession of this weapon is

substantially related to that purpose. *Id.*

In this case, HRS § 134-53 is not a complete ban on all knives. *See* Lacy,

903 N.E.2d at 492 (Indiana switchblade law upheld because it is not a complete

ban on all knives but only "knives that open automatically or may be propelled ...

by hand pressure applied to a button, device containing gas, spring, or other device in the handle of the knife"). The statute is a regulation of a subset of dangerous and unusual knives. The government's objective in regulating butterfly knives was to protect public safety by reducing access to such weapons by criminals and gang members, which is clearly a significant, substantial, or important state interest. And there is a "reasonable fit" between the challenged regulation and the asserted objective in that HRS § 134-53 bans only butterfly knives, which are specifically defined as "a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity, or both[.]"

Plaintiffs' reliance on *State v. Montalvo*, 162 A.3d 270 (2017), a New Jersey case, failed to note that the case did not involve possession of a machete, but the illegal brandishing of a weapon. *Id*. 162 at 280. ("The statute applies to circumstances resulting in a threat of harm to persons or property.") Plaintiffs' remaining citations to the protection of knives generally is not inconsistent with HRS § 134-53, as the statute is not a complete ban on all knives, and therefore clearly falls within the states' regulatory powers. The regulation is tailored to the state's objective of protecting the public and survives intermediate scrutiny.

## IV.  CONCLUSION

For the reasons stated above, Hawaii's butterfly knife statute, HRS § 134-53, is constitutional and Defendants respectfully request that the Court deny Plaintiffs' motion.

Dated:  Honolulu, Hawaii, April 7, 2020.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General of Hawaii

/s/ Ryan M. Akamine
CARON M. INAGAKI
RYAN M. AKAMINE
Deputy Attorneys General

Attorneys for Defendants
CLARE E. CONNORS and
AL CUMMINGS, in their official
capacities
